**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

CHRISTOPHER WELLER, on behalf of himself and all others similarly situated,

Plaintiff,

v.

DOLLAR GENERAL CORPORATION, DOLGENCORP, LLC,

Defendants.

**No. ________________**

**COLLECTIVE AND CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

**COMPLAINT**

Plaintiff Christopher Weller ("Plaintiff"), individually and on behalf of all others similarly situated ("Class members"), brings this complaint against Defendants Dollar General Corporation and Dolgencorp, LLC ("Defendants"), and alleges as follows.

**Nature of Action**

1. This class and collective action is brought on behalf of current and former employees of a nationwide chain of retail stores owned and operated by Defendants to recover unpaid regular and overtime wages, as well as all other available relief pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Pennsylvania Minimum Wage Act of 1968 ("PMWA"), 43 P.S. § 333.101, *et seq.*, the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1, *et seq.*, and the law of unjust enrichment.

2. Defendants operate a nationwide chain of retail stores, called "Dollar General" stores, which sell a wide range of merchandise to consumers, including paper goods, household cleaning supplies, and food items. Dollar General employs nearly 100,000 people nationwide.

3. Defendants have systematically and intentionally violated applicable federal and state laws by, among other things, applying common policies to their employees which deprive them of regular and overtime wages. These policies include:

a. applying a time clock rounding policy which purports to round employee time to the nearest 15-minute increment but systematically results in under-recording the actual time worked by employees;

b. requiring employees to clock in at least seven minutes before the start of their shifts which, in conjunction with the rounding policy, contributes to the systematic under-recording of the actual time worked by employees; and

c. failing to pay warehouse workers, including Plaintiff, for time spent donning and doffing protective gear.

4. As a result of the foregoing intentional and wrongful conduct, Plaintiff brings this class and collective action seeking actual damages, liquidated damages, statutory damages, attorneys' fees, and costs for a class of similarly-situated persons who, like him, have been subjected to Defendants' illegal practices in violation of the FLSA, PMWA, WPCL, and the law of unjust enrichment.

**Jurisdiction and Venue**

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff raises a claim under the FLSA, a federal statute. The Court also has subject matter jurisdiction pursuant to the FLSA, 29 U.S.C. § 216(b).

6. This Court has personal jurisdiction over Defendants because a substantial portion of the wrongdoing alleged in this Complaint took place in the Commonwealth of Pennsylvania, Defendants are authorized to do business in Pennsylvania and have both administrative and retail

locations in Pennsylvania, Defendants have sufficient minimum contacts with Pennsylvania, and/or Defendants intentionally avail themselves of markets in Pennsylvania through the promotion, marketing and sale of their products to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the named Plaintiff resides here, because Defendants have thousands of customers in this District, because Defendants receive substantial revenue from customers in this District, because Defendants maintains administrative and retail locations in this District, and because a substantial part of the events or omissions giving rise to the claims occurred in this District. Venue is also proper pursuant to the FLSA, 29 U.S.C. § 216(b).

**Parties**

8. Plaintiff Christopher Weller is a resident of Ashland, Pennsylvania.

9. Defendant Dollar General Corporation is a Tennessee corporation with its principal place of business in Goodlettsville, Tennessee.

10. Defendant Dolgencorp, LLC ("Dolgencorp") is a Kentucky limited liability corporation with its principal place of business in Goodlettsville, Tennessee. Upon information and belief, Dolgencorp is a wholly owned subsidiary of Defendant Dollar General Corporation.

**Factual Allegations**

11. Plaintiff began working at a warehouse operated by Defendants, located in Bethel, Pennsylvania, on or around August 24, 2015.[1]

[1] Plaintiff voluntarily left his employment with Defendants on March 16, 2017, to take a position with another company.

12. The warehouse at which Plaintiff worked stores merchandise which is ultimately shipped to Defendants' retail stores for sale to consumers.

13. Plaintiff's job duties, while working for Defendants, included picking merchandise to deliver to stores and putting up and pulling down merchandise pallets.

14. During his employment with Defendants, Plaintiff was an hourly employee whose hourly rate was $15 per hour when he started and reached $17.50 per hour by the time he concluded his employment with Defendants.

15. Plaintiff generally worked five days a week and occasionally worked more than 40 hours in a week.

16. Shortly after beginning his employment with Defendants, Plaintiff noticed that his paychecks seemed to be short based on his recollection of the actual hours he worked.

17. As a result, Plaintiff began to keep track of his weekly time. Plaintiff's recordkeeping confirmed his belief that he was not being paid for all time that he worked and, as a result, was being underpaid both regular and overtime wages.

18. Ultimately, Plaintiff requested copies of his time-clock records from Defendants. A copy of the records he received from Defendants are attached hereto as Exhibit A.

**A. <u>Defendants' Time-Clock Rounding Errors</u>**

19. The time-clock records of Plaintiff's work kept by Defendants further confirmed Plaintiff's conclusion that he was not being paid for all of the time that he worked.

20. For example, during his first week of work, Plaintiff's time-clock punches showed that he worked 22 minutes longer than the "total amount" of time reflected by the time-clock, which had rounded his time. *See* Exhibit A, pp. 1-2.

21. This loss of time actually worked was repeated throughout Plaintiff's employment with Defendants. For instance, in weeks two through five of Plaintiff's employment, time-clock rounding shorted Plaintiff of 16 minutes, 32 minutes, 36 minutes, and 41 minutes of time actually worked, respectively. *See* Exhibit A, pp. 2-4.

22. By way of further example, in the period running from August 24, 2015 to November 20, 2015, Plaintiff lost approximately 400 minutes of work due to time-clock rounding. *See* Exhibit A, pp. 1-9. In the period running from February 7, 2016 to March 10, 2016, Plaintiff lost over 200 minutes of work due to time-clock rounding. *See* Exhibit A, pp. 16-19. During the remaining weeks of his employment, Plaintiff also cumulatively lost hundreds of additional minutes of work due to time-clock rounding.

23. Plaintiff worked more than 40 hours in several of these weeks and was thus deprived not only of regular pay but also of the full overtime pay he was owed, as a result of Defendants' inaccurate recording of his time.

24. The cause of Defendants' failure to record and pay Plaintiff for all time worked was the rounding policy which Defendants applied to Plaintiff's time-clock entries. For instance, on August 27, 2015, during Plaintiff's first week of employment, he clocked in at 6:53 a.m. and clocked out for lunch at 11:03 a.m., representing 4 hours and 10 minutes of work. *See* Exhibit A, p. 1. Defendants rounded this period down to 4 hours when calculating Plaintiff's total time worked for this portion of his shift. *Id.*

25. The same day, Plaintiff clocked back in from lunch at 11:33 a.m. and clocked out for the day at 3:36 p.m., a period of 3 hours and 3 minutes of work. *See* Exhibit A, p. 1. Defendants rounded this period down to 3 hours when calculating Plaintiff's total time worked.

*Id.* Thus, for his August 27, 2015 shift in total, Plaintiff worked 13 minutes more than he was credited by Defendants and went unpaid for this time.

26. The rounding policy applied by Defendants to Plaintiff's time clock punches systematically under-recorded time worked by Plaintiff, resulting in a long-term loss of time and corresponding pay during the entire course of Plaintiff's employment during which he was unpaid for numerous hours of work, some of which were overtime hours.

27. While the FLSA permits employers to round employee time, such rounding must "not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." *See* 29 C.F.R. § 785.48. Defendants' rounding policy clearly violates the FLSA because it does result, over a period of time, in failing to compensate Plaintiff and Class members for all the time they have actually worked.

**B. Defendants' Early Clock-In Policy**

28. Adding to the foregoing issues with Defendants' rounding policy was an additional policy, instituted by Defendants, whereby employees at its warehouses are required to clock in seven minutes prior to the beginning of a shift and to begin work immediately after clocking in.

29. A portion of the under-recorded time caused by Defendants' rounding policy is directly traceable to Defendants' early clock-in policy.

30. The rounding of time entries described in paragraphs 23 and 24 are examples. Another is the rounding that occurred on September 2, 2015, when Plaintiff clocked in for his shift[2] seven minutes early at 6:53 p.m. and clocked out at 11:51 p.m., a period of 4 hours and 58

---

[2] During his employment with Defendants, Plaintiff generally worked one of two shifts: 1) a shift beginning at 7:00 p.m. and ending the following morning at 3:30 a.m., or whenever his assigned worked was completed; or 2) a shift beginning at 6:30 p.m. and ending the following

minutes. *See* Exhibit A, p. 2. Defendants rounded this period down to 4 hours and 45 minutes. *Id.* Yet another example of the improper effect of the early clock-in policy took place on February 7, 2016, when Plaintiff clocked in for his shift at 6:53 p.m. and clocked out for lunch at 11:35 p.m., a period of 4 hours and 42 minutes. *Id.* at p. 16. Defendants' rounded this period down to 4 hours and 30 minutes. *Id.* These are but a few of the many instances in which the early clock-in policy added to the under-recording of Plaintiff's time and a corresponding failure to pay both regular and overtime wages.

**C. Defendants' Policy not to Pay for Time Spent Donning and <u>Doffing Safety Gear</u>**

31. In addition to the early clock-in policy, Defendants required Plaintiff and other warehouse employees to arrive before shifts to don safety gear, such as such as safety glasses, as well as other job-related equipment including a label holder and a headset to assist in picking merchandise.

32. Defendants required employees to put this gear on in a locker room separate from the warehouse floor, before clocking in seven minutes early for shifts.

33. Following their shifts and after clocking out, Plaintiff and other warehouse employees were required to return to the locker room to remove their safety gear.

34. Thus, Plaintiff and other warehouse employees were off the clock when they were required to don and doff their protective gear and therefore were unpaid for this time, which generally amounted to roughly seven minutes per day for Plaintiff.

---

morning at 3:00 a.m., or whenever his assigned worked was completed.

**FLSA Collective Action Allegations**

35. Under Count I, Plaintiff seeks relief for violations of the FLSA as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of all members of the FLSA Collective Action Class defined below.

36. Plaintiff and the members of the FLSA Collective Action Class are similarly situated in that: (1) they had substantially similar job requirements and pay provisions; (2) were classified by Defendants as non-exempt employees who were entitled to receive overtime pay; and (3) were subject to Defendants' common practice, policy, or plan of willfully and unlawfully refusing to pay them at least 1.5 times their regular hourly rate for overtime, in violation of the FLSA.

37. Count I, alleging violations of the FLSA, may be brought and maintained as an "opt-in" collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b), since the claims of the Plaintiff are similar to the claims of the members of the FLSA Collective Action Class. The FLSA Collective Action Class is defined as follows:

> All individuals currently or formerly employed by Defendants whose time clock entries were rounded by Defendants, beginning three years from the date of filing of this Complaint through the date of final judgment in this case.

38. The names and addresses of the members of the FLSA Collective Action Class are available from Defendants, and notice should be provided to the members of the FLSA Collective Action Class via first class mail to the last address known to Defendants as soon as possible.

**Class Action Allegations**

39. Plaintiff also brings this action, pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure, on behalf of himself and the following Class:

> All individuals currently or formerly employed by Defendants in Pennsylvania whose time clock entries were rounded by Defendants, beginning four years from the date of filing of this Complaint through the date of final judgment in this case.

40. Plaintiff also brings this action, pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure, on behalf of himself and the following Subclass:

> All individuals currently or formerly employed as warehouse workers by Defendants in Pennsylvania, beginning four years from the date of filing of this Complaint through the date of final judgment in this case.

41. Unless otherwise specified herein, the Class and Subclass shall be collectively referred to as the "Class."

42. Defendants paid all of the Class members in the same manner and under the same standard employment policies, procedures and practices.

43. Defendants have been aware of the hours worked by the Class members, but have failed to pay the Class members the full amount of wages to which they are entitled for this work time.

44. Plaintiff is currently unaware of the identities of all Class members. However, upon information and belief, there are thousands of persons who have worked for Defendants in Pennsylvania during the Class Period and would, therefore, be Class members. For this reason, the Class is so numerous that joinder of all Class members would be impracticable and a class action would be the most efficient mechanism for resolution of the claims of the Class.

45. There exist numerous questions of law or fact that are common to all Class members and predominate over any questions solely affecting individual Class members. The questions of law or fact common to Plaintiff and the Class include, but are not limited to:

a. whether Defendants' rounding policy resulted in Defendants failing to pay Plaintiff and Class members for all of the time they actually worked;

b. whether Plaintiff and Subclass members were entitled to be paid for time donning and doffing safety equipment;

c. whether Defendants' conduct violated the FLSA, 29 U.S.C. § 201, *et seq.*;

d. whether Defendants' conduct violated the Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 333.101 *et seq.*;

e. whether Defendants' conduct violated the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.*; and

f. the nature and extent of class-wide injury and the measure of damages for the injury.

46. Plaintiff's claims are typical of the claims of the Class and Subclass, because his time clock entries were rounded by Defendants and he was employed as a warehouse worker, much the same as Class and Subclass members, and was subject to and victimized by the same unlawful policies and practices of Defendants.

47. Plaintiff is represented by counsel experienced in class action litigation and in litigating claims under the FLSA and Pennsylvania wage and hour laws. Plaintiff will fairly and adequately protect the interests of the Class and has no conflicts with the interests of the Class.

48. The prosecution of separate actions against Defendants would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants. In addition, adjudications with respect to individual members of the Class could as a practical matter be dispositive of the

interests of all the other members of the Class not parties to such adjudications, or could substantially impede or impair their ability to protect their interests.

49. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

50. Without a class action, Defendants will likely retain the benefit of their wrongdoing and will continue in the unlawful course of action described herein, which will result in further damages to Plaintiff and the Class.

51. The members of the Class are known to Defendants and are readily identifiable through Defendants' records.

**Tolling of Statute of Limitations**

52. Applicable statutes of limitation may be tolled based upon principles of equitable tolling, fraudulent concealment, and/or the discovery rule. For collective and Class members whose claims would otherwise be barred by the applicable statute of limitations, equitable tolling is available and should apply.

53. Opt-in plaintiffs and members of the Class could not, despite the exercise of due diligence, have fully discovered the underlying basis for their claims. Further, Defendants knowingly and actively concealed the basis for Plaintiff's claims by engaging in a scheme that was, by its very nature and purposeful design, self-concealing.

## Claims for Relief

### Count I

**Violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.***
**(Brought by Plaintiff on Behalf of Himself and on Behalf of the Members of the FLSA Collective Action Class)**

54. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

55. At all relevant times, each Defendant was an "employer" engaged in interstate "commerce," within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendants employed "employee[s]," including Plaintiff and each of the members of the FLSA Collective Action Class. At all relevant times, Defendants had gross operating revenues in excess of $500,000.

56. Attached hereto as Exhibit B is the consent to join form signed by Plaintiff in this action pursuant to §16(b) of the FLSA, 29 U.S.C. §§ 216(b) and 256. It is likely that other individuals will sign consent forms and join as plaintiffs with respect to this claim in the future.

57. The FLSA requires each covered employer, such as Defendants, to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek.

58. At all relevant times, Plaintiff and the FLSA Collective Action Class were non-exempt employees.

59. At all relevant times, including for each week of Plaintiff's employment with Defendants, pursuant to uniform, systematic and non-individualized policies and practices, Defendants intentionally failed and refused to pay overtime premiums to Plaintiff and the FLSA Collective Action Class for their hours worked in excess of forty hours per week.

60. By failing to compensate Plaintiff, and the members of the FLSA Collective Action Class, at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, Defendants violated the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. § 207(a)(1) and § 215(a).

61. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

62. Plaintiff, on behalf of himself and the members of the FLSA Collective Action Class, seeks damages in the amount of his respective unpaid overtime compensation, liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as this Court deems just and proper.

63. Plaintiff, on behalf of himself and the members of the FLSA Collective Action Class, seeks recovery of his attorneys' fees and costs of action to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

## Count II

**Violation of the Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 333.101, *et seq.***
**(On Behalf of Plaintiff, the Class, and Subclass)**

64. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

65. Defendants are each an "employer" within the meaning of the Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 333.104(g).

66. By regularly and routinely failing to pay Plaintiff and Class members one and one-half times their regularly hourly wage rate for overtime hours worked, Defendants violated the provisions of the Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 333.104(c).

67. As a result of Defendants' unlawful acts, Plaintiff and Class members have been deprived of compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, together with costs and attorneys' fees pursuant to the Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 333.113, and such other legal and equitable relief as this Court deems just and proper.

**Count III**

**Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1, *et seq.***
**(On Behalf of Plaintiff, the Class, and Subclass)**

68. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

69. Defendants are each an "employer" within the meaning of the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.2a. The Wage Payment and Collection Law, 43 P.S. §260.3, provides in relevant part: "Every employer shall pay all wages, . . . , due to his employees on regular paydays designated in advance by the employer."

*70.* By their actions alleged above, Defendants violated the provisions of the Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.*

71. As a result of Defendants' unlawful acts, Plaintiff and Class members have been deprived of compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, and liquidated damages, together with costs and attorneys' fees pursuant to the Wage Payment and Collection Law, 43 P.S. §§ 260.9a and 260.10.

## Count IV

### Unjust Enrichment – Quasi Contract
### (On Behalf of Plaintiff, the Class, and Subclass)

32. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

33. Defendants devised and implemented a plan to increase their profits by depriving Plaintiff and Class members of their full regular and overtime wages.

34. By securing the work and efforts of Plaintiff and Class members without compensating them at their rightful level of pay, Defendants retained monies they owed to Plaintiff and Class members and thereby enjoyed reduced over-head with respect to their operations. Defendants therefore recognized additional profits, to their own benefit and to the detriment of Plaintiff and Class members. It would be unjust to allow Defendants to retain such benefits.

35. Accordingly, Plaintiff and Class members are entitled to judgment in an amount equal to the benefits unjustly retained by Defendants.

## Prayer for Relief

WHEREFORE, Plaintiff respectfully prays that relief be granted as set forth above and also as follows:

(A) For an order certifying that Count I of this Complaint may be maintained as a collective action pursuant to 29 U.S.C. § 216(b), appointing Plaintiff as Class Representative for the FLSA Collective Action Class and Plaintiff's undersigned counsel as counsel to the FLSA Collection Action Class, and that prompt notice of this action be issued to potential members of the opt-in FLSA Collective

Action Class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims;

(B) For an order certifying this action as a class action, appointing Plaintiff and his undersigned counsel to represent the Class and Subclass;

(C) A declaratory judgment that the practices complained of herein are unlawful under the FLSA and Pennsylvania law;

(D) Require Defendants to provide an accounting to Plaintiff of the amount of damages incurred by him and the Class members, and direct Defendants to provide to Plaintiff a list of all persons employed by them during the Class Period, including the last known address and telephone number of each employee, so that Plaintiff can give such Class members notice of the pendency of this action and an opportunity to make an informed and timely decision about whether to participate in it;

(E) Award Plaintiff and the FLSA Collective Action Class all unpaid overtime as calculated by the applicable provision of the FLSA at 29 U.S.C. §§ 201 *et seq.*, and applicable regulations promulgated in the Code of Federal Regulations and/or opinions and directives of the Department of Labor, as well as liquidated damages to be paid by Defendants, together with such prejudgment interest as may be allowed by law;

(F) Determine the damages sustained by Plaintiff and the Class members as the result of Defendants' unlawful underpayment of regular and overtime wages under Pennsylvania law, and award those damages, plus liquidated damages, against Defendants and in favor of Plaintiff and the Class members, together with such prejudgment interest as may be allowed by law;

(G) Award Plaintiff and the Class members their costs and disbursements in this suit, including, without limitation, reasonable attorneys' fees and any reasonable accountants' or experts' fees;

(H) Enter a permanent injunction ordering Defendants henceforth to refrain from engaging in the unlawful conduct described in this Complaint and to take all necessary measures to ensure that it is at all times in compliance with such injunction; and

(I) Grant Plaintiff and the Class members such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury for all issues so triable.

Dated: May 18, 2017

Respectfully submitted,

Noah Axler
Marc Goldich
**AXLER GOLDICH LLC**
1520 Locust Street, Suite 301
Philadelphia, PA 19102
Tel: (267) 534-7400
Fax: (267) 534-7407
naxler@axgolaw.com
mgoldich@axgolaw.com

Samuel A. Dion
Dion & Goldberger
1845 Walnut Street
Suite 1199
Philadelphia, PA 19103
215-546-6033 (tel)
215-546-6269 (fax)
Email: samueldion@aol.com

Mitchell L. Paul
1845 Walnut Street, Suite 1199
Philadelphia, PA 19103
215-546-6811(tel)
215-546-6812(fax)
mpaul@paullaw.net

*Attorneys for Plaintiff*