**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTOPHER WELLER, on behalf of himself and all others similarly situated,** | § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **Civil Action No. 5:17-cv-02292-JLS** |
| **DOLLAR GENERAL CORPORATION, DOLGENCORP, LLC,** | § § § | |
| **Defendants.** | § § | |

**DEFENDANT DOLGENCORP, LLC'S OBJECTIONS TO
THE MAGISTRATE JUDGE'S MARCH 4, 2019 ORDER PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 72(A) AND LOCAL RULE 72.1(IV)(A)**

Respectfully submitted,

Joel S. Allen (*Pro Hac Vice*)
Melissa M. Hensley (*Pro Hac Vice*)
McGuireWoods LLP
2000 McKinney Avenue, Suite 1400
Dallas, Texas 75201
Telephone: 214.932.6400
Facsimile:  214.932.6399

Chen G. Ni (*Pro Hac Vice*)
McGuireWoods LLP
77 West Wacker Drive, Suite 4100
Chicago, Illinois 60601
Telephone: 312.849.8164
Facsimile: 312.920.6146

Joseph L. Gordon
PIETRAGALLO GORDON ALFANO
BOSICK & RASPANTI, LLP
1818 Market St., Suite 3402
Philadelphia, PA 19103
Telephone: 215-320-6200
Facsimile: 215-754-5181

ATTORNEYS FOR DEFENDANT

I.      INTRODUCTION ............................................................................................. 1

II.     RELEVANT BACKGROUND ......................................................................... 4

        A.      Dollar General's Pre-Certification Communications with Putative Class
                Members .............................................................................................. 4

        B.      Plaintiff's Motion to Strike ................................................................. 5

        C.      The Magistrate Judge's Order Granting In-Part Plaintiff's Motion to Strike ........ 6

III.    ARGUMENT .................................................................................................. 7

        A.      The Magistrate Judge Incorrectly Ruled that Dollar General and its
                Counsel Violated PRPC 4.2 ................................................................ 7

                1.      In federal court, putative class members in a putative class action
                        are not represented parties unless and until the court certifies a Fed.
                        R. Civ. P. 23 class .................................................................. 8

                2.      The Magistrate Judge incorrectly deferred to Pennsylvania
                        procedural law governing class actions in state court, where
                        putative class members are considered to be represented parties
                        even prior to class certification .............................................. 11

        B.      The Magistrate Judge's Prohibition of All Communications between
                Defense Counsel and Fed. R. Civ. P. Putative Class Members is Contrary
                to Supreme Court Precedent and Violates the First Amendment ...................... 14

        C.      The Sanctions Issued by the Magistrate Are Inappropriate ............................... 17

                1.      There is no basis to require Dollar General to disclose its attorney
                        work product, especially opinion work product .................................... 17

                        a.      The identities of putative class members interviewed by
                                Dollar General's counsel constitute opinion work product,
                                the disclosure of which would reveal defense counsel's
                                mental impressions, conclusions, opinions, and legal
                                theories .................................................................... 18

                        b.      There is no "substantial need" for Dollar General's attorney
                                work product, and Plaintiff can obtain their "substantial
                                equivalent by other means." ........................................... 21

                2.      There is no basis to require Dollar General to pay Plaintiff's "legal
                        fees and costs." ...................................................................... 23

        D.      The Sanctions Issued by the Magistrate Are Vague and Open-ended ................ 25

IV.     CONCLUSION ........................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AAMCO Transmissions, Inc. v. Marino*,
   1991 WL 193502 (E.D. Pa. Sept. 24, 1991) ............................................................9

*Bayshore Ford Truck Sales, Inc. v. Ford Motor Co.*,
   541 Fed. Appx. 181 (3d Cir. 2013) ......................................................................23

*Bell v. Beneficial Consumer Discount Co.*,
   465 Pa. 225, 348 A.2d 734 (1975) ..................................................................12, 13

*Bobryk v. Durand Glass Mfg. Co., Inc.*,
   2013 WL 5574504 (D.N.J. Oct. 9, 2013)...................................................9, 15, 16

*Braun v. Wal-Mart Stores, Inc.*,
   Pa. Com. Pl. Jan. 15, 2003 ............................................................................12, 13

*Chiperas v. Rubin*,
   1998 WL 531845 (D.D.C. Aug. 24, 1998) ............................................................20

*In re Community Bank of Northern Virginia*,
   418 F.3d 277 (3d Cir. 2005)...............................................................................8, 14

*Dondore v. NGK Metals Corporation*,
   152 F. Supp. 2d 662 (E.D. Pa. 2001) ............................................................12, 13

*Elec. Data Sys. Corp. v. Steingraber*,
   2003 WL 21653405 (E.D. Tex. July 9, 2003) ......................................................20

*Erie Railroad Co. v. Tompkins*,
   304 U.S. 64 (1938)......................................................................................2, 7, 11

*Faloney v. Wachovia Bank, N.A.*,
   2008 WL 11366235 (E.D. Pa. July 28, 2008)......................................................15

*Ferruza v. MTI Tech.*,
   2002 WL 32344347 (C.D. Cal. June 13, 2002) ....................................................20

*Fried v. SunGard Recovery Sys.*,
   1995 U.S. Dist. LEXIS 2518 (E.D. Pa. Feb. 22, 1995) ........................................10

*Gates v. Rohm & Haas Co.*
   2006 WL 3420591 (E.D. Pa. Nov. 22, 2006) ......................................................13

*Gauzza v. Prospect Med. Holdings, Inc.*,
  2018 WL 4853294 (E.D. Pa. Oct. 4, 2018)..............................................................15

*Gulf Oil Company v. Bernard*,
  452 U.S. 89, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981) .................................... *passim*

*Gutierrez v. Johnson & Johnson*,
  2003 WL 26477887 (D.N.J. Apr. 3, 2003) ............................................................15

*Haffer v. Temple Univ. of Com. Sys. of Higher Educ.*,
  115 F.R.D. 506 (E.D. Pa. 1987)...........................................................................24

*Joseph v. Quality Dining, Inc.*,
  No. 5:16-cv-01907-JLS (E.D. Pa.)...........................................................3, 10, 12

*Katz v. DNC Servs. Corp.*,
  275 F. Supp. 3d 579 (E.D. Pa. 2017) ....................................................................15

*Kleiner v. First Nat. Bank of Atlanta*,
  751 F.2d 1193 (11th Cir. 1985) ............................................................................24

*New York Times Co. v. U.S. Dep't of Justice*,
  138 F. Supp. 3d 462 (S.D.N.Y. 2015).....................................................................19

*In re Nissan Motor Corp. Antitrust Litig.*,
  552 F.2d 1088 (5th Cir. 1977) .........................................................................22, 23

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978)............................................23

*Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Tr. Fund v.
  Arbitron, Inc.*,
  278 F.R.D. 335 (S.D.N.Y. 2011) .........................................................................19

*Powell v. Tosh*,
  2013 WL 12234614 (W.D. Ky. Apr. 11, 2013) .........................................................9

*Reinig v. RBS Citizens, N.A..*,
  2018 WL 6837077 (3d Cir. Dec. 31, 2018) ...................................................6, 8, 12

*In re Sch. Asbestos Litig.*,
  842 F.2d 671 (3d Cir. 1988)..................................................................................14

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010).............................................................................................11

*Sig Swiss Indus. Co. v. Fres-Co Sys.*,
  1993 WL 147241 (E.D. Pa. Apr. 30, 1993) ...........................................................19

*Slavinski v. Columbia Ass'n, Inc.*,
    2011 WL 1310256 (D. Md. Mar. 30, 2011)............................................................16

*Sporck v. Peil*,
    759 F.2d 312 (3d Cir. 1985)................................................................18, 19, 21

*Standard Fire Ins. Co. v. Knowles*,
    568 U.S. 588, 133 S. Ct. 1345, 185 L. Ed. 2d 439 (2013)................................8, 12

*Stokes v. Renal Treatment Centers-Illinois, Inc.*,
    1998 WL 917523 (E.D. Mo. Sept. 16, 1998).........................................................20

*In re Student Fin. Corp*,
    2006 WL 3484387 (E.D. Pa. Nov. 29, 2006) ....................................................21, 22

*Tedesco v. Mishkin*,
    629 F. Supp. 1474 (S.D.N.Y. 1986)..................................................................24, 25

*The Kay Co., LLC v. Equitable Prod. Co.*,
    246 F.R.D. 260 (S.D.W. Va. 2007)............................................................................9

*In re Tylenol (Acetaminophen) Mktg., Sales Practices & Products Liab. Litig.*,
    2015 WL 7075812 (E.D. Pa. Nov. 13, 2015) ........................................................11

*United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*,
    270 F. Supp. 3d 220 (D.D.C. 2017)........................................................................19

*United States v. Amerada Hess Corp.*,
    619 F.2d 980 (3d Cir. 1980)....................................................................................18

*Webb v. Discover Property & Casualty Ins. Co.*,
    2008 U.S. Dist. LEXIS 95431 (M.D. Pa. Nov. 24, 2008) ......................................11

**Statutes**

FLSA............................................................................................................6, 10, 15

Pennsylvania Minimum Wage Act ........................................................................10

**Other Authorities**

ABA Formal Opinion 07-445 ..............................................................................9, 10

Fed. R. Civ. P. 23 .................................................................................... *passim*

Fed. R. Civ. P. 26..............................................................................19, 21, 23

Fed. R. Civ. P. 37.................................................................................................23

Fed. R. Civ. P. 72(a) ..................................................................................................................1

Local Rule 72.1 ..........................................................................................................................1

Pa. R. Civ. P. 1701 ..................................................................................................2, 11, 12, 13

Pennsylvania Rules of Professional Conduct Rule 4.2 ........................................................ *passim*

Pursuant to Fed. R. Civ. P. 72(a) and Local Rule 72.1(IV)(A), Defendant Dolgencorp, LLC ("Dollar General") submits these Objections to the March 4, 2019 Order (the "Order") of Magistrate Judge Timothy R. Rice granting in-part Plaintiff's Motion to Strike and for Sanctions. Dollar General submit the following specific objections as more fully explained *infra*:

First, the conclusion in the Order that Dollar General and its counsel improperly communicated with unrepresented putative class members in violation of Rule 4.2 of the *Pennsylvania Rules of Professional Conduct* was clearly erroneous and contrary to Third Circuit and Supreme Court precedent. Second, the Order erroneously imposed speech restrictions on defense counsel without the necessary "clear record and specific findings" required under Supreme Court precedent. Third, the sanctions imposed in the Order would require Dollar General to disclose its attorney work product contrary to Rule 26(b)(3)(B) of the Federal Rules of Civil Procedure. Fourth, the Order erroneously imposed monetary sanctions against Dollar General without any findings of bad faith conduct. Fifth, the Order erroneously imposed monetary sanctions that are vague and open-ended.

## I. INTRODUCTION

The issue here arises from the erroneous application of the ethical rule that a lawyer representing a party in litigation is prohibited from communicating with another party who is also represented by counsel. In his Motion to Strike and For Sanctions (the "Motion to Strike"), Plaintiff accuses Dollar General of violating this rule (codified in Pennsylvania as Rule 4.2 of the *Pennsylvania Rules of Professional Conduct* ("PRPC 4.2")) because Dollar General's outside counsel interviewed and obtained declarations from several current and former hourly employees who work at Dollar General's distribution center in Bethel, Pennsylvania (the "Bethel DC"). According to Plaintiff, these employees are "parties to this action" under Pennsylvania law (Dkt.

47-1 at 9), and thus protected by PRPC 4.2, solely because they are putative class members whom Plaintiff and his counsel seek to represent in this putative class action under Rule 23 of the Federal Rules of Civil Procedure.  Plaintiff contends that it is irrelevant that this is a Fed. R. Civ. P. 23 class action, as opposed to a class action under the Pennsylvania Rules of Civil Procedure, and that it is immaterial that the Court has yet to certify a Fed. R. Civ. P. 23 class or appoint class counsel to represent the putative class members.  The Magistrate Judge agreed with Plaintiff that "Pennsylvania law . . . treats such putative members as represented parties until a certification decision is made" (Dkt. 63 at 3), and based on that reasoning, concluded that Dollar General's pre-certification communications with the putative class members were improper under PRPC 4.2, though he correctly found that defense counsel's actions were not taken in bad faith.

But, before Pennsylvania ethical rule PRPC 4.2 even applies, the individuals at issue must be considered "parties" in the lawsuit.  With all due respect, that is where the Magistrate Judge fundamentally erred.  Under Fed. R. Civ. P. 23, the procedural device Plaintiff chose here, putative class members in federal court are <u>not</u> "parties" in the lawsuit, nor are they considered "represented" by counsel, unless and until a court certifies a Fed. R. Civ. P. 23 class.  By contrast, under Pennsylvania *procedural* law, specifically Rule 1701 of the Pennsylvania Rules of Civil Procedure, putative class members in Pennsylvania state court are considered to be "parties" represented by the named plaintiff's counsel as soon as the lawsuit is filed.  But, Pennsylvania procedural law does not apply in this federal action and the Magistrate Judge erred when he applied that state procedural principle here.  Dkt. 63 at 3–4.  Pursuant to the *Erie* doctrine, federal actions are governed by federal procedural rules, not state procedural rules. Federal procedural law governing Fed. R. Civ. P. 23 class actions cannot be ignored in favor of Pennsylvania procedures merely because the lawsuit is filed in a federal court located in Pennsylvania.  That PRPC 4.2

applies in Pennsylvania federal courts does not alter the federal procedural principle that putative class members are not represented parties, and thus outside the scope of PRPC 4.2, until a Fed. R. Civ. P. 23 class is certified.  *See Joseph v. Quality Dining, Inc.*, No. 5:16-cv-01907-JLS, Dkt. 39 (E.D. Pa.) (Hon. J.L. Schmehl).

The Magistrate Judge also erred in analyzing the Supreme Court's decision in *Gulf Oil Company v. Bernard*, in which the Court held that a categorical ban on pre-certification communications between a party's counsel and putative class members is an unconstitutional prior restraint on expression in violation of the First Amendment.  452 U.S. 89, 104, 101 S. Ct. 2193, 2202, 68 L. Ed. 2d 693 (1981).  Under *Gulf Oil*, a federal district court can restrict or ban pre-certification communications between putative class members and counsel only if there is a "clear record and specific findings" of abusive, coercive, or misleading communications.  Implicit in the holding is the well-settled view that such pre-certification communications are appropriate in Fed. R. Civ. P. 23 class actions, absent the troublesome communications prohibited by the Court in *Gulf Oil*.  The Magistrate Judge did not make any such findings here and thus cannot impose a prior restraint on Dollar General or its counsel's First Amendment right to speak with unrepresented putative class members.

For these reasons and the reasons set forth below, this Court should set aside the Magistrate Judge's March 4, 2019 Order and deny Plaintiff's Motion to Strike and For Sanctions in its entirety. Alternatively, this Court should set aside the onerous sanctions imposed in the Order, which are inconsistent with the Magistrate Judge's finding that Dollar General and its counsel did not act in bad faith.

## II.  <u>RELEVANT BACKGROUND</u>

**A.     Dollar General's Pre-Certification Communications with Putative Class Members.**

The pre-certification communications between Dollar General's counsel and putative class members stem from a visit by defense counsel to the Bethel DC in early September 2018, after Plaintiff had filed his Motion for Class Certification and Conditional Collective Action Certification ("Plaintiff's Motion for Certification").  Declaration of Melissa M. Henley ("Hensley Decl."), Dkt. 49-1, ¶ 2.  As a result of this visit, Dollar General's counsel obtained sworn declarations from 17 putative class members (the "Declarants")[1] for use in defending this litigation – specifically to respond to Plaintiff's Motion for Certification.  *Id.* at ¶ 3; *see also* Dkt. 45-12 through 45-26.

Prior to conducting interviews with the putative class members, defense counsel provided each with a written disclosure, the purpose of which was to provide a neutral explanation of this lawsuit and the underlying claims.  Hensley Decl., ¶¶ 4–6.  Each putative class member was then able to make an informed decision regarding whether to participate in the interview and/or whether to provide a sworn declaration if asked to do so by Dollar General's counsel.  *Id.* at ¶ 6.  Dollar General's counsel read these disclosures out loud to each putative class member selected for interview.  *Id.* at ¶ 7.  The putative class members were asked to read along and initial each paragraph as it was read to confirm their understanding.  *Id.*

The disclosure informed the putative class members of the existence of the present lawsuit and the basic factual allegations underlying Plaintiff's claims.  *Id.* at ¶ 5, Ex. A.  The interviewer

---

[1] In the Order, the Magistrate Judge identified 16 of the 17 Declarants.  In addition to those 16 individuals, Dollar General also interviewed and obtained a declaration from Marcus Cullins.  At the time of the interview, Mr. Cullins was a supervisor at the Bethel DC, but had previously worked as an hourly employee, thus he is also a putative class member in this putative class action.

further explained that she was an attorney, that she represented Dollar General (and not the employee), that the Plaintiff sought to represent current and former hourly distribution center employees (including the employee) from approximately 2013 to the present, and that the attorney was investigating and gathering facts in order to defend Dollar General in the litigation and to provide Dollar General with advice. *Id.* The putative class members were told that their participation was optional, and that no employment action, positive or negative, would be taken against them for choosing to speak (or to not speak) with the attorney. *Id.* at ¶ 8. Putative class members also were told that they could end the interview at any time without consequence, and that if they were asked to provide a written statement, doing so was completely voluntary and no employment action, positive or negative, would be taken against them based upon their decision. *Id.*

After reviewing and signing the disclosure statements, each putative class member was asked if he or she was willing to participate in an interview. *Id.* at ¶ 9. Among those who agreed to be interviewed, some also agreed to provide Dollar General's counsel with a written statement. *Id.* at ¶ 10. Those who agreed to provide a written statement were provided draft declarations for their review and given the opportunity to make changes prior to signing. *Id.* At all times during this process, putative class members were told that they would suffer no positive or negative action for agreeing or declining to participate in the interviews, or for providing or declining to provide a sworn declaration. *Id.* at ¶ 8.

### B.    Plaintiff's Motion to Strike.

On November 1, 2018, Plaintiff filed his Motion to Strike. Dkt. 47. After Dollar General and Plaintiff filed their respective Response and Reply briefs, the Court held a telephonic status conference on December 21, 2018. Dkt. 55. During the status conference, Plaintiff's counsel

reiterated their position that defense counsel cannot contact putative class members under Pennsylvania law because they are represented "parties" to the lawsuit even prior to class certification.  Following the status conference, the Court granted Dollar General leave to file a Supplemental Brief Regarding Plaintiff's Motion to Strike, which called the Court's attention to a newly decided Third Circuit case confirming Dollar General's position that Fed. R. Civ. P. 23 putative class members are not represented "parties" prior to class certification and reiterating that the cases relied upon by Plaintiff were not applicable to a Fed. R. Civ. P. 23 class action.  Dkts. 57, 66 (citing *Reinig v. RBS Citizens, N.A.*., 2018 WL 6837077, at *10 (3d Cir. Dec. 31, 2018)).

### C.   The Magistrate Judge's Order Granting In-Part Plaintiff's Motion to Strike.

On March 4, 2019, the Magistrate Judge entered an order (the "Order") granting in-part Plaintiff's Motion to Strike.   Dkt. 64.   The Order held that Dollar General improperly communicated with putative class members prior to certification of the Rule 23 class and conditional certification of the Section 216(b) FLSA collective action.  *Id.*  In the Order, the Magistrate Judge agreed with Plaintiff that any pre-certification communication with putative class members "was prohibited under Pennsylvania law, which treats such putative members as represented parties until a certification decision is made."  Dkt. 63 at 3.  According to the Magistrate Judge, "[Dollar General] was bound by law governing Rule 23 class actions in Pennsylvania[.]"  *Id.* at 4.

The Magistrate Judge expressly found that Dollar General and its counsel did not engage in bad faith conduct and ruled that striking the declarations was unwarranted.  *Id.* at 8–9.  However, the Magistrate Judge found prejudice to Plaintiff and imposed limited sanctions for the alleged improper conduct.  *Id.*  Specifically, the Magistrate Judge ruled as follows:   (a) Plaintiff is permitted to depose the Declarants whose declarations were submitted in support of the Opposition

6

to Certification; (b) Plaintiff is permitted to depose any other putative class members interviewed by Dollar General's counsel pre-certification; and (c) Dollar General is to pay "all legal fees and costs incurred by Plaintiff in the depositions." *Id.* at 9; Dkt. 64 at ¶¶ 3–4.[2]  The Magistrate Judge imposed no limitations on the scope or amount of the legal fees and costs Dollar General was obligated to pay.

## III.  ARGUMENT

### A.  The Magistrate Judge Incorrectly Ruled that Dollar General and its Counsel Violated PRPC 4.2.

The text of Rule 4.2 of the Pennsylvania Rules of Professional Conduct reads:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

This language is identical to Rule 4.2 of the ABA Model Rules of Professional Conduct. Importantly, nothing in PRPC 4.2 specifically addresses the propriety of communications with putative class members; the rule merely prohibits communications with a person "know[n] to be *represented* by another lawyer."   Accordingly, in order to determine whether putative class members in a Fed. R. Civ. P. 23 class action are "represented by another lawyer" and thus eligible for protection under PRPC 4.2, this Court must refer to federal procedural rules and principles governing federal class actions.   Even when deciding state law claims based on diversity or supplemental jurisdiction, it is axiomatic that federal courts must still apply federal procedural rules and principles. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

---

[2] On March 8, 2019, Dollar General filed a Motion to Stay Case Deadlines Pending Ruling on Dolgencorp, LLC's Objections to the Magistrate Judge's March 4, 2019 Order.  Dkt. 68.

1.    In federal court, putative class members in a putative class action are not
represented parties unless and until the court certifies a Fed. R. Civ. P. 23
class.

It is well-established that under Fed. R. Civ. P. 23, putative class members are not "parties"

to a class action lawsuit prior to class certification.  As recently as December 31, 2018, the Third

Circuit confirmed this federal procedural principle in *Reinig v. RBS Citizens, N.A.*, 2018 WL

6837077, at *10 (3d Cir. Dec. 31, 2018) (unequivocally recognizing that "every plaintiff who opts

in to a collective action has a party status, whereas unnamed class members in Rule 23 class actions

do not. . . . [A] putative class acquires an independent legal status ***once*** it is certified under Rule

23") (emphasis added) (internal quotation marks omitted); *see also Standard Fire Ins. Co. v.

Knowles*, 568 U.S. 588, 593, 133 S. Ct. 1345, 1349, 185 L. Ed. 2d 439 (2013) (stating that "'a

nonnamed class member is [not] a party to the class-action litigation *before the class is certified*'")

(brackets and italics in original) (quoting *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2379, 180 L. Ed.

2d 341 (2011)).  Without "party status," putative class members in federal court cannot be deemed

to be "represented" by the named plaintiff's attorney.  *Reinig*, 2018 WL 6837077, at *10; *see also

In re Community Bank of Northern Virginia*, 418 F.3d 277, 313 (3d Cir. 2005) (concluding that

"class counsel do not possess a traditional attorney-client relationship with absent [Rule 23] class

members.").  Without such status, PRPC 4.2 does not apply.

The language of Fed. R. Civ. P. 23 confirms the principle that putative class members are

not "represented" by the named plaintiff's attorney until after class certification.  Under Fed. R.

Civ. P. 23(c)(1)(B) and 23(g), a federal district court cannot appoint "class counsel" until after the

court enters an order certifying the class.  Here, Plaintiff's counsel attempts to put the cart before

the horse, holding themselves out to be "class counsel" for the putative class members in this

federal lawsuit before the Court has even ruled that this action warrants class certification or that

they are adequate class counsel.  Pursuant to the plain language of Fed. R. Civ. P. 23, Plaintiff's counsel at this time only represents the named Plaintiff, Christopher Weller, and no other putative class member.  Accordingly, under controlling federal precedent, neither the Declarants nor any other putative class member were "represented by another lawyer" at the time Dollar General's counsel engaged them in pre-certification communications.

Consistent with the above reasoning, the overwhelming consensus among federal courts is that no attorney-client relationship exists between the named plaintiff's counsel and putative class members until after Fed. R. Civ. P. 23 class certification.  *See, e.g., The Kay Co., LLC v. Equitable Prod. Co.*, 246 F.R.D. 260, 264 (S.D.W. Va. 2007) (citing to ABA Formal Opinion 07-445 which "reflects the majority rule that prior to class certification there is no lawyer-client relationship between the plaintiff's counsel and the putative class members"); *Powell v. Tosh*, 2013 WL 12234614, at *2 (W.D. Ky. Apr. 11, 2013) (same); *Bobryk v. Durand Glass Mfg. Co., Inc.*, 2013 WL 5574504, at *9 (D.N.J. Oct. 9, 2013) (same).

Notably, in 2007, the American Bar Association issued a Formal Opinion concluding that with respect to Rule 4.2, counsel for a named plaintiff in a Fed. R. Civ. P. 23 class action lawsuit does not represent putative class members unless the putative class member has manifested an intention to be represented by the attorney or "until the [Rule 23] class has been certified and the time for opting out has expired."  ABA Formal Opinion 07-445.[3]  Since the 2007 ABA Formal Opinion on Rule 4.2, counsel for Dollar General is not aware of any Pennsylvania federal court that has endorsed Plaintiff's position with respect to PRPC 4.2.  Even prior to the 2007 ABA

---

[3] This Court looks to the ABA's Model Rules of Professional Conduct and its Formal Opinions for guidance when ruling on issues involving attorney ethics and discipline.  *See AAMCO Transmissions, Inc. v. Marino*, 1991 WL 193502, at *1 (E.D. Pa. Sept. 24, 1991) (citing to ABA Formal Opinion 91-359 regarding Rule 4.2 and noting that "[t]he Pennsylvania Supreme Court has adopted the Model Rules of Professional Conduct").

Formal Opinion, this Court held that Fed. R. Civ. P. 23 putative class members are not represented by the named plaintiff's counsel prior to an order granting class certification and appointing class counsel.  *See Fried v. SunGard Recovery Sys.*, 1995 U.S. Dist. LEXIS 2518, at *1 n.1 (E.D. Pa. Feb. 22, 1995) (concluding that, "[b]ecause there is no class certification yet, Rule 4.2 has no applicability to contacts between defense counsel and the potential class members") (Hon. J.C. Joyner).

More recently, this Court addressed the precise issue presented here – whether PRPC 4.2 prohibits defense counsel from communicating with Fed. R. Civ. P. 23 putative class members prior to class certification – in *Joseph v. Quality Dining, Inc.*, No. 5:16-cv-01907-JLS (E.D. Pa.) (Hon. J.L. Schmehl).  Like here, the lawsuit in *Joseph* included both Section 216(b) collective action claims under the FLSA and Fed. R. Civ. P. 23 class action claims based on the Pennsylvania Minimum Wage Act.  *Id.* at Dkt. 6.  Defense counsel in *Joseph* began to interview the defendant's current employees (who were putative class members in the Fed. R. Civ. P. 23 class action) in order to investigate and assist in the defense against the plaintiffs' allegations. In response, the plaintiffs' counsel objected on the basis of PRPC 4.2 and cited to the same case law relied upon by Plaintiff's counsel in this case.  The plaintiffs' counsel in *Joseph* thereafter threatened to file an ethics complaint with the Pennsylvania Disciplinary Board after defense counsel interviewed at least one putative class member who agreed to speak with them.  In response to plaintiffs' counsel threat of an ethics complaint, defense counsel filed a Motion to Confirm Defendants' Right to Communicate with Unrepresented Putative Class Members.  *Id.* at Dkt. 28.  On August 8, 2016, Judge Schmehl concluded that defense counsel's communications with putative class members did not violate PRPC 4.2 and entered an order confirming that "Defendants, and their counsel, may communicate with unrepresented putative class members, ***until and unless*** this Court grants

<u>Plaintiffs' Motion for Class Certification</u>, if any, under Federal Rule of Civil Procedure 23." *Id.* at Dkt. 39 (emphasis added).  Other Pennsylvania federal courts agree.  *See Webb v. Discover Property & Casualty Ins. Co.*, 2008 U.S. Dist. LEXIS 95431, at *7–9 (M.D. Pa. Nov. 24, 2008) (denying motion to limit defense counsel's contact with putative class members because there was no "clear record" of abuse).

> 2.   <u>The Magistrate Judge incorrectly deferred to Pennsylvania procedural law governing class actions in state court, where putative class members are considered to be represented parties even prior to class certification.</u>

Rather than applying federal procedural law governing the status of Fed. R. Civ. P. 23 putative class members, the Magistrate Judge improperly deferred to "Pennsylvania law, which treats such putative members as represented parties until a certification decision is made." Dkt 63 at 3.  However, the "Pennsylvania law" relied upon by the Magistrate Judge finds its origins under the Pennsylvania Rules of Civil Procedure governing class actions in *state* court, and thus has no application in a *federal* action because federal courts must apply federal procedural rules pursuant to the *Erie* doctrine.  *See Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398-99 (2010) (holding that state law, which limited the scope of class actions under Fed. R. Civ. P. 23, was in direct conflict with a federal procedural rule and thus cannot be enforced by a federal court); *In re Tylenol (Acetaminophen) Mktg., Sales Practices & Products Liab. Litig.*, 2015 WL 7075812, at *10 (E.D. Pa. Nov. 13, 2015) (noting that, "[i]n *Shady Grove*, the Supreme Court reaffirmed Hanna's main tenet: a Federal Rule of Civil Procedure covering a dispute governs, notwithstanding a contrary state law") (internal citations omitted).

Under Pennsylvania Rule of Civil Procedure 1701, a "class action" is defined to mean "any action brought by or against parties as representatives of a class ***until the court by order refuses to certify it as such or revokes a prior certification under these rules***."  Pa. R. Civ. P. 1701(a)

(emphasis added).  Pennsylvania Rule 1701 dictates that putative class members in Pennsylvania state court are considered to be "parties to the action" and "[t]he class is in the action *until properly excluded*."  *See* Pa. R. Civ. P. 1701 explanatory note 1977 (quoting *Bell v. Beneficial Consumer Discount Co.*, 465 Pa. 225, 348 A.2d 734 (1975)) (emphasis added).  In stark contrast, under Fed. R. Civ. P. 23, putative class members are not parties to the action unless and until the court certifies a class and appoints class counsel.  *See Knowles*, 568 U.S. at 593; *Reinig*, 2018 WL 6837077, at *10; *Joseph*, No. 5:16-cv-01907-JLS, at Dkt. 39 (Hon. J.L. Schmehl).  Accordingly, the analysis of party status (and thus, whether putative class members are "represented" by counsel) under Pennsylvania procedural law is completely different from federal procedural law.  The Magistrate Judge's reliance on "Pennsylvania law" fails to appreciate this important procedural distinction and erroneously supplants federal procedural law with a state procedural rule.

For example, the Magistrate's reliance upon *Braun v. Wal-Mart Stores, Inc.* is entirely inapposite because it was decided in Pennsylvania state court under Rule 1701 rather than under Fed. R. Civ. P. 23.  2003 WL 1847695, at *1 (Pa. Com. Pl. Jan. 15, 2003).

Similarly, reliance on *Dondore v. NGK Metals Corporation* is also misplaced.  152 F. Supp. 2d 662 (E.D. Pa. 2001).  No Fed. R. Civ. P. 23 class action was alleged in *Dondore*.[4]  Rather, the class action lawsuit at issue in that case was a separate, parallel lawsuit filed in Pennsylvania state court under Rule 1701 by the same plaintiffs' attorneys and concerning the same allegations against the same defendant.[5]  Defense counsel in the federal court, non-class action sought to

---

[4] The *Dondore* court described the disputed question as follows, "May a defense attorney interview potential witnesses in an individual personal injury action when the potential witnesses are also *putative class members in a state court action* involving the same alleged tortious conduct and when the interviews are to be conducted without the consent of the attorney who initiated the state class action?"  *Id.* at 663 (emphasis added).

[5] *See Dondore*, 152 F. Supp. 2d at 664 ("In addition to the individual tort actions filed in this court, counsel to Mrs. Conrad and Mrs. Dondore have also initiated a class action lawsuit with other named plaintiffs against NGK Metals

interview non-party witnesses who also happened to be putative class members in the *state court* class action.  In holding that PRPC 4.2 prohibited such contact between defense counsel and putative class members in the *state* court action, this Court relied on state cases interpreting Rule 1701 because the procedural question regarding party status stemmed from the state court class action, not the federal case.[6]  Here, there is no underlying state court class action upon which Pennsylvania procedural Rule 1701 can be applied and upon which any claim of current class representation of putative class members can be based.

Aside from *Braun* and *Dondore*, the only other case cited by Plaintiff that directly addresses PRPC 4.2 is *Gates v. Rohm & Haas Co.*  2006 WL 3420591, at *2 n.2 (E.D. Pa. Nov. 22, 2006).  But, the *Gates* court's commentary on PRPC 4.2 is merely dicta and contained only in a footnote in which the court references the inapposite holdings in *Dondore* and *Bell* (both cases that deal with and rely upon the existence of Rule 1701 class actions in state court), without any analysis as to why those cases are analogous or applicable to a Rule 23 federal class action.  *Id.*  In any event, this Court is not bound by the footnote-dicta in *Gates*, which referenced inapposite case law dealing with Rule 1701 class actions rather than Fed. R. Civ. P. 23 class actions, a reference that was immaterial to any holding in the *Gates* case (and thus, merely dicta).

---

Corporation and Cabot in the Court of Common Pleas of Philadelphia County. . . . We have been advised that the state court has not yet decided the issue of class certification.").

[6] *See Dondore*, 152 F. Supp. 2d at 666 ("Under Pennsylvania law, putative class members are 'properly characterized as parties to the action.' Thus, during the interim between the filing of the action and the certification of the class, 'unnamed class members do have certain interests in the lawsuit.' . . . . . . Rule 4.2 of the Rules of Professional Conduct prohibits defense counsel from contacting or interviewing potential witnesses who are putative class members in *Pohl v. NGK Metals Corp.,* July Term, 2000, No. 733 (Ct.Com.Pl.Phila.County), without the consent of counsel for the named plaintiffs in that action.'") (internal citations omitted) (citing *Bell*, 348 A.2d at 736; Pa. R. Civ. P. 1701 explanatory note 1977; *Miller v. Federal Kemper Ins. Co.*, 352 Pa.Super. 581, 508 A.2d 1222, 1228 (1986); *Alessandro v. State Farm Mut. Auto. Ins. Co.*, 487 Pa. 274, 409 A.2d 347, 350 n. 9 (1979)).

**B.      The Magistrate Judge's Prohibition of All Communications between Defense Counsel and Fed. R. Civ. P. Putative Class Members is Contrary to Supreme Court Precedent and Violates the First Amendment.**

In *Gulf Oil Co. v. Bernard*, the Supreme Court held that federal district courts cannot restrict the parties or their counsel in a class action from communicating with Fed. R. Civ. P. 23 putative class members, unless the speech restriction "is justified by a likelihood of serious abuses" and based on a "clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." 452 U.S. at 101, 104. While acknowledging that federal district courts have "both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties," the Supreme Court cautioned that "this discretion is not unlimited" and must be balanced with "the rights of the parties," including their First Amendment rights to free expression without serious restraints. *Id.* at 101–02.

As the Third Circuit observed, "[o]rders regulating communications between litigants . . . pose a grave threat to first amendment freedom of speech," thus federal courts must closely adhere to the First Amendment principles set forth in *Gulf Oil* when issuing such orders in a class action case. *In re Sch. Asbestos Litig.*, 842 F.2d 671, 680 (3d Cir. 1988). Consistent with First Amendment principles, any order restricting such pre-certification communications must be "carefully drawn" so that it "limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Id.* (quoting *Gulf Oil*, 452 U.S. at 102); *see also In re Community Bank of Northern Virginia*, 418 F.3d 277, 312 (3d Cir. 2005) (noting that the "broad and sweeping nature of the District Court's ban on communications from Appellants' counsel [to putative Rule 23 class members] . . . involve serious restraints on expression" which must be reconciled with *Gulf Oil*).

14

Consistent with established precedent, this Court has frequently applied the *Gulf Oil* principles when ruling on whether to restrict pre-certification communications between a party's counsel and Fed. R. Civ. P. 23 putative class members. *See, e.g.*, *Faloney v. Wachovia Bank, N.A.*, 2008 WL 11366235, at *1 (E.D. Pa. July 28, 2008) (noting that plaintiff "must establish good cause to bar [defendant] from communicating with putative class members. I must balance the competing interests of the parties and make specific findings 'that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties'") (quoting *Gulf Oil*, 452 U.S. at 101); *Gauzza v. Prospect Med. Holdings, Inc.*, 2018 WL 4853294, at *1 (E.D. Pa. Oct. 4, 2018) (concluding that "restrictions on parties' communicat

ions with potential class members should address 'potential abuse[ ]' and be based on 'a weighing of the need for a limitation and the potential interference with the rights of the parties'") (quoting *Gulf Oil*, 452 U.S. at 101-02; *Katz v. DNC Servs. Corp.*, 275 F. Supp. 3d 579, 582 (E.D. Pa. 2017) (relying on *Gulf Oil* to restrict communications between plaintiff's counsel and potential class members in lawsuit alleging FLSA and PMWA claims).

Here, the Magistrate Judge erred by imposing a complete ban on all pre-certification communications between defense counsel and putative class members without first establishing any "likelihood of serious abuses" or a "clear record and specific findings," as required by *Gulf Oil* and its progeny to justify the restraint on Dollar General's and its counsel's First Amendment rights. *Id.* at 104.  Furthermore, the Magistrate Judge's Order was not "carefully drawn" so that it "limits speech as little as possible, consistent with the rights of the parties under the circumstances," including Dollar General's right as the employer "to communicate with its employees . . . in order to gather information about the corporation's actions." *Gutierrez v. Johnson & Johnson*, 2003 WL 26477887, at *3 (D.N.J. Apr. 3, 2003); *see also Bobryk v. Durand*

*Glass Mfg. Co., Inc.*, 2013 WL 5574504, at *7 (D.N.J. Oct. 9, 2013) (noting that, "the mere existence of an employer[-]employee relationship does not by itself warrant the imposition of restrictions on communications between employers and potential class members") (citing *Gulf Oil*, 452 U.S. at 102); *Slavinski v. Columbia Ass'n, Inc.*, 2011 WL 1310256, at *4 (D. Md. Mar. 30, 2011) (same).

The Magistrate Judge also incorrectly distinguished between plaintiff's counsel's right to communicate with putative class members and defense counsel's right to communicate with putative class members. *See* Dkt. 63 at 5. According to the Magistrate Judge, the Supreme Court in *Gulf Oil* never approved "ex parte communication between defense counsel and putative class members, or held that such communication could not be limited." *Id.* But, the Supreme Court's analysis regarding the appropriateness of communications with Fed. R. Civ. P. 23 putative class members applies to all parties (both plaintiffs and defendants and their respective counsel), and the central holding of the case did not distinguish between plaintiffs' First Amendment rights and defendants' First Amendment rights.[7] Accordingly, the core of *Gulf Oil* – that a district court must establish a "clear record and specific findings" to justify a ban on communications between counsel and putative class member, and that any speech restriction must be narrowly tailored to protect First Amendment rights – cannot be limited to just one party.

The Magistrate Judge also appears to take the position that a *Gulf Oil* analysis is unnecessary in this case because "ethics rules may properly limit communication between counsel and ***represented parties*** or other parties with interests in an action." Dkt. 63 at 5. This analysis relies on the erroneous assumption that Fed. R. Civ. P. 23 putative class members are "represented

---

[7] Some of the Supreme Court's analysis in *Gulf Oil* focused on the specific rights of the plaintiffs in that case, but that was merely because the plaintiffs, not defendants, sought to overturn the speech restriction in *Gulf Oil*.

parties" in federal court, which they simply are not prior to class certification.  *See* Section III.A,

*supra*.  As such, PRPC 4.2 does not provide a proper basis under *Gulf Oil* for the Magistrate Judge

to categorically ban Dollar General and its counsel from engaging in pre-certification

communications with Fed. R. Civ. P. 23 putative class members.

### C.    The Sanctions Issued by the Magistrate Are Inappropriate.

####    1.    There is no basis to require Dollar General to disclose its attorney work product, especially opinion work product.

Although he concluded that Dollar General improperly communicated with putative class

members, the Magistrate Judge found no bad faith on the part of Dollar General or its counsel.

Dkt. 63 at 8–9.  The Magistrate Judge also denied Plaintiff's request to strike the witness

declarations from the record.  *Id.*  The Magistrate Judge correctly concluded that if Plaintiff was

prejudiced, any such prejudice can be cured by allowing Plaintiff the opportunity to conduct

additional discovery, such as deposing each of the Declarants.  *Id.*

But, the Magistrate Judge erred by authorizing Plaintiff to notice the depositions of "other

putative class members interviewed by [Dollar General's] counsel," including individuals who

were interviewed but from whom declarations were not requested or obtained. Dkt. 64, ¶ 4.  This

remedy effectively requires Dollar General to disclose its attorney work product by identifying the

putative class members it strategically selected for interview as part of its litigation strategy, and

would consequently reveal the identities of the witnesses from whom Dollar General strategically

decided not to request or obtain declarations.

Requiring Dollar General to disclose its attorney work product and reveal its attorneys'

"mental impressions, conclusions, opinions, or legal theories" is unwarranted under these

circumstances.  Plaintiff has no "substantial need for the materials to prepare its case" and can

"without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P.

17

23(b)(3).  Even if there is a finding of "substantial need," federal courts must "protect against disclosure of mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  Fed. R. Civ. P. 23(b)(3)(B).  This is referred to as "opinion work product," which includes "an attorney's legal strategy, his intended lines of proof, his evaluation of the strengths and weaknesses of his case, and ***the inferences he draws from interviews of witnesses***."  *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985) (emphasis added). Opinion work product is "accorded an almost ***absolute protection*** from discovery because any slight factual content that such items may have is generally outweighed by the adversary system's interest in maintaining the privacy of an attorney's thought processes and in ensuring that each side relies on its own wit in preparing their respective cases."  *Id.* (citing *Upjohn Co. v. United States*, 449 U.S. 383, 401, 101 S. Ct. 677, 688, 66 L.Ed.2d 584 (1981)) (emphasis added).

> a.  *The identities of putative class members interviewed by Dollar General's counsel constitute opinion work product, the disclosure of which would reveal defense counsel's mental impressions, conclusions, opinions, and legal theories.*

In the Third Circuit, an employer's investigation in anticipation of or for the purposes of litigation, and the identities of the individuals it chooses to interview, "indisputably" qualifies as attorney work product and deserves protection.  *See United States v. Amerada Hess Corp.*, 619 F.2d 980, 982 (3d Cir. 1980) (noting that the level of work product protection depends upon "the nature of the document, the extent to which it may directly or indirectly reveal the attorney's mental processes, the likely reliability of its reflection of witness's statements, the degree of danger that it will convert the attorney from advocate to witness, and the degree of availability of the information from other sources").  In *Sporck v. Peil*, the Third Circuit held that the "selection and compilation of documents by counsel in this case in preparation for pretrial discovery falls within

the highly-protected category of opinion work product" because it would "reveal important aspects of [counsel's] understanding of the case." *Id.*

Courts have extended the Third Circuit's logic in *Sporck* to counsel's strategic selection of witnesses for fact interviews. *See New York Times Co. v. U.S. Dep't of Justice*, 138 F. Supp. 3d 462, 472 (S.D.N.Y. 2015) (citing the Third Circuit's decision in *Sporck*, 759 F.2d at 315, for the proposition that revelation of "an attorney's impressions and mental processes . . . could occur through the attorney's mere selection of whom to interview, even where the content of the interview may not be work product itself"); *see also Sig Swiss Indus. Co. v. Fres-Co Sys.*, 1993 WL 147241, at *6 (E.D. Pa. Apr. 30, 1993) (stating that, "[c]learly, the process of choosing witnesses and evidence to present at trial involves the mental impressions and strategic processes of an attorney, and as such is protected under the work product doctrine of Fed. R. Civ. P. 26(b)(3)") (citing *Sporck*, 759 F.2d 312).

Echoing this line of reasoning, federal courts routinely hold that the work product doctrine protects from disclosure the identities of witnesses counsel decides to interview. *See, e.g.*, *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 270 F. Supp. 3d 220, 225 (D.D.C. 2017) (concluding that interrogatory seeking identities of witnesses that counsel "determined were worth interviewing" constitutes attorney work product because it "calls for Claimant's counsel to reveal their legal theories and strategic decisions regarding who to interview in preparation for trial" and would reveal "who, based on their theory of the case, they believe are the most important, or problematic" witnesses); *Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Tr. Fund v. Arbitron, Inc.*, 278 F.R.D. 335, 343 n.8 (S.D.N.Y. 2011) (recognizing that "a party demand[ing] a list of persons whom opposing counsel has interviewed . . . is essentially seeking, and potentially piggybacking on, a roadmap of an adversary's pretrial investigation" and thus "implicates core

policies behind the work product doctrine"); *Ferruza v. MTI Tech.*, 2002 WL 32344347, at *3 (C.D. Cal. June 13, 2002) (stating that "the identity of witnesses interviewed by opposing counsel is protected [under the work-product doctrine because] ... if the identity of the interviewed witnesses is disclosed, opposing counsel can infer which witnesses counsel considers important, revealing mental impressions and trial strategy. Such evaluations, impressions, and strategy are at the heart of the work product rule") (internal citations omitted).[8]

Prior to visiting the Bethel DC to interview putative class members in connection with this litigation, defense counsel strategically selected a small group of employees for the interviews. Of this small group of employees, defense counsel asked a subset of the interviewees to provide a declaration. These strategic decisions were made based on defense counsel's impression of the interviewees and judgment as to whether the interviewees, among other things, would serve as effective witnesses. After obtaining declarations, defense counsel then decided which declarants to rely upon in its Opposition to Certification based on counsel's view of litigation strategy and the strengths and weaknesses of the case.

Importantly, the purpose of these carefully timed and strategically planned interviews by defense counsel was not merely to investigate the underlying facts of this case, but rather to deliberately and strategically obtain declarations from certain employees whom defense counsel

---

[8] *See also Elec. Data Sys. Corp. v. Steingraber*, 2003 WL 21653405, at *2 (E.D. Tex. July 9, 2003) ("The Court finds that revealing the identity of witnesses interviewed would permit opposing counsel to infer which witnesses counsel considers important, thus, revealing mental impressions and trial strategy."); *Chiperas v. Rubin*, 1998 WL 531845, at *1 (D.D.C. Aug. 24, 1998) ("[D]isclosure . . . of the names of the witnesses who provided statements to plaintiff's counsel crosses the boundary into work product because the names requested are interwoven with the preparation of plaintiff's case. . . . Clearly such decisions constitute 'strategy' and a lawyer's 'mental process' in preparing for litigation."); *Stokes v. Renal Treatment Centers-Illinois, Inc.*, 1998 WL 917523, at *2 (E.D. Mo. Sept. 16, 1998) ("In the present case, plaintiff's counsel has engaged in a selective process of gathering statements from certain witnesses in preparation for litigation, which necessarily reveals her mental impressions and opinions about the evidence in support of her client's case. These opinions are protected from disclosure by the attorney work product doctrine.")

determined would be beneficial to Dollar General's "legal strategy" and "intended lines of proof." *Sporck*, 759 F.2d at 316. As such, requiring Dollar General to disclose the identities of these individuals selected for interviews would unavoidably reveal defense counsel's "mental impressions, conclusions, opinions, or legal theories." Fed. R. Civ. P. 26(b)(3)(B).

> b.   There is no "substantial need" for Dollar General's attorney work product, and Plaintiff can obtain their "substantial equivalent by other means."

None of the putative class members whom Dollar General selected for interviews (and whose identities the Magistrate Judge ordered Dollar General to reveal) has *unique* discoverable knowledge. Rather, each and every Bethel DC hourly employee merely has personal knowledge of his or her own job duties, work hours, clock-in/clock-out and donning/doffing practices (if any), *etc*. As such, there can be no "substantial need" to know which specific putative class members defense counsel selected or decided to interview, as Plaintiff could easily obtain the "substantial equivalent" of the sought-after work product without "undue hardship" by interviewing any number of other current or former Bethel DC hourly employees, including each of the Declarants whom the Magistrate Judge has expressly authorized Plaintiff to depose.

Moreover, Plaintiff's counsel had nearly a year of certification discovery to interview (or depose) putative class members for evidence to support Plaintiff's Motion for Certification. Counsel either elected not to engage in such efforts or was unable to find any supporting declarants for Plaintiff's Motion for Certification. Plaintiff's inability to find or develop supporting witnesses or evidence does not establish the requisite "substantial need" to force Dollar General to disclose its work product, nor can it overcome the "almost absolute" protection afforded to defense counsel's opinion work product. *Sporck*, 759 F.2d at 316; *see also In re Student Fin. Corp*, 2006 WL 3484387, at *14 (E.D. Pa. Nov. 29, 2006) (holding that a party seeking work product stemming

from witness interviews failed to establish "substantial need" because it could have interviewed the other parties' former employees at any time and counsel's "delay[] in doing so does not establish the substantial hardship necessary to obtain attorney work product").

Under these circumstances, there is no "substantial need" to require Dollar General to reveal the identities of the putative class members whom Dollar General did not use as witnesses to support its Opposition to Certification. To the extent the Court believes Plaintiff should be allowed to depose putative class members beyond the Declarants (which should only occur if the Court believes Dollar General's communications with the Declarants were improper), the Court could consider reopening discovery to allow Plaintiff a second opportunity to collect evidence from putative class members, without disturbing the "almost absolute" protection that Dollar General's opinion work product deserves under Federal Rule of Civil Procedure 26(b)(3)(B).

2.   There is no basis to require Dollar General to pay Plaintiff's "legal fees and costs."

Despite concluding that Dollar General and its counsel's conduct was not in bad faith, the Magistrate Judge ordered Dollar General to "pay all legal fees and costs incurred by Plaintiff in the depositions" of the Declarants and other putative class members, while authorizing a minimum of 17 full depositions. Dkt. 64, ¶ 4. In imposing this significant monetary sanction, the Magistrate Judge incorrectly relied on the four-factor test for a *discovery* violation under Rule 37. *See* Dkt. 63 at 8 (citing to *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000)). This matter, however, does not involve a discovery dispute or discovery violation. Rather, the issue is whether Dollar General's counsel breached any ethical rules in their pre-certification communications with putative class members in a putative class action, and thus any sanctions imposed must be analyzed pursuant to the Court's inherent power to "protect class members and fairly conduct the action" under Fed. R. Civ. P. 23. *See* Fed. R. Civ. P. 23(d)(1); *In re Nissan*

22

*Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1102 (5th Cir. 1977) (distinguishing district court's authority under Fed. R. Civ. P. 23 to "enter whatever orders are necessary to the conduct of the [class] action" from the court's authority under Fed. R. Civ. P. 26 through 37 which "govern discovery of information relevant to the subject matter (of a) pending action") (internal quotation marks omitted); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350, 98 S. Ct. 2380, 2389, 57 L. Ed. 2d 253 (1978) (distinguishing district court's powers under Fed. R. Civ. P. 23 from a discovery dispute under Fed. R. Civ. P. 26).

While Fed. R. Civ. P. 37(a)(5)(A) expressly authorizes the Court to impose "reasonable expenses" including "attorney's fees" incurred by a prevailing party in a discovery dispute, Fed. R. Civ. P. 23 contains no such provision.  Rather, the purpose of the Court's "duty and broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties" is to "protect class members and fairly conduct the action," to "safeguard class members from unauthorized [and] misleading communications from the parties and their counsel," and to "protect the integrity of the litigation."  *See Gulf Oil*, 452 U.S. at 100; *Bayshore Ford Truck Sales, Inc. v. Ford Motor Co.*, 541 Fed. Appx. 181, 186 (3d Cir. 2013) (brackets in original); Fed. R. Civ. P. 23(d)(1)(B).

Here, requiring Dollar General to pay the attorneys' fees and costs incurred by Plaintiff to conduct additional discovery on the Declarants and other putative class members advances none of the goals espoused by Fed. R. Civ. P. 23.  The Magistrate Judge did not find defense counsel's conduct to be in bad faith, nor did he find that defense counsel engaged in any abusive, coercive, or misleading communications with putative class members.  The integrity of this class action has not been compromised, and the rights of putative class members have not been disturbed.  The monetary sanction imposed in the Order also ignores the fact that Plaintiff's counsel had nearly a

year of certification discovery to interview (or depose) putative class members for evidence to support their case, well before defense counsel engaged in any pre-certification communications with putative class members.  Plaintiff's failure or inability to find supporting witnesses or evidence for his case is certainly not the result of any purported prejudice caused by Dollar General or its counsel, and Dollar General should not be required to fund Plaintiff's litigation efforts at this late stage if Plaintiff is afforded a second opportunity to conduct discovery to support his Motion for Class Certification and to respond to the evidence that Dollar General gathered in opposition thereto, including the Declarations.

Under these circumstances, there is no need, or authority, for the Court to impose a punitive, monetary sanction on Dollar General, especially not one as substantial as paying Plaintiff the cumulative attorneys' fees and costs associated with taking and preparing for over 17 witness depositions.  Here, the Magistrate Judge did not make any findings that defense counsel engaged in bad faith conduct, false and misleading communications to class members, or other inexcusable behavior undermining the integrity of the class action that have led other courts to impose sanctions for improper conduct by defense counsel in a class action.  *Cf. Haffer v. Temple Univ. of Com. Sys. of Higher Educ.*, 115 F.R.D. 506, 513 (E.D. Pa. 1987) (imposing "substantial fine" because defense counsel's communications with putative class members "contained false and misleading information," "was in bad faith and inexcusable," and "interfered with plaintiffs' counsel's ability to prepare this case for trial"); *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1199 (11th Cir. 1985) (imposing $50,000 fine defendant acted in "bad faith" by soliciting exclusion requests from putative class members in violation of a prior court order); *Tedesco v. Mishkin*, 629 F. Supp. 1474, 1486 (S.D.N.Y. 1986) (imposing a sanction of $64,792.35 in attorneys' fees and costs plus a $10,000 punitive fine on defense counsel for engaging in "false and misleading communications

to class members, threats, subornation of perjury, and other *in terrorem* tactics").

**D.      The Sanctions Issued by the Magistrate Are Vague and Open-ended.**

Should the Court decline to set aside the Order requiring Dollar General to "pay all legal fees and costs incurred by Plaintiff in the depositions," (Dkt. 64, ¶ 5), Dollar General requests the Court to establish specific terms and parameters for this Order to prevent ambiguity and minimize the potential for disputes.  The Order's phrasing raises a series of questions regarding what specific fees and costs are recoverable (i.e. travel costs, transcript costs, preparation time, deposition time), whether recoverable fees and costs must be reasonable and necessary (i.e. preventing multiple attorneys from preparing for or attending the same depositions), and whether Plaintiff must submit an affidavit of fees and costs for the Court's review and approval prior to receiving payment.  The lack of definite, clear, and specific guidelines in the Order renders it too vague to serve as the basis for establishing Dollar General's future obligations in connection with any depositions that Plaintiff wishes to take.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, this Court should set aside the Magistrate Judge's March 4, 2019 Order, vacate the inappropriate and onerous sanctions imposed against Dollar General, and deny Plaintiff's Motion to Strike and For Sanctions in its entirety.

Dated March 18, 2019                          Respectfully submitted,

                                              /s/*Joel S. Allen*
                                              Joel S. Allen (*Pro Hac Vice*)
                                              Texas Bar No. 795069
                                              jallen@mcguirewoods.com
                                              Melissa M. Hensley (*Pro Hac Vice*)
                                              Texas Bar No. 00792578
                                              mhensley@mcguirewoods.com
                                              McGuireWoods LLP
                                              2000 McKinney Avenue
                                              Suite 1400
                                              Dallas, Texas 75201
                                              Telephone: 214.932.6400
                                              Facsimile:  214.932.6399

                                              Chen G. Ni (*Pro Hac Vice*)
                                              Illinois Bar No. 6329089
                                              cni@mcguirewoods.com
                                              McGuireWoods LLP
                                              77 West Wacker Drive
                                              Suite 4100
                                              Chicago, Illinois 60601
                                              Telephone: 312.849.8164
                                              Facsimile: 312.920.6146

                                              Joseph L. Gordon
                                              Pa. Bar No. 209075
                                              PIETRAGALLO GORDON ALFANO
                                              BOSICK & RASPANTI, LLP
                                              1818 Market St., Suite 3402
                                              Philadelphia, PA 19103
                                              jlg@pietragallo.com
                                              Telephone: 215-320-6200
                                              Facsimile: 215-754-5181

                                              ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

On the 18th day of March, 2019, a true and correct copy of the foregoing was caused to be served upon to the following attorneys of record through the Court's CM/ECF system:


Noah Axler
Marc Goldich
Axler Goldich LLC
1520 Locust Street, Suite 301
Philadelphia, PA 19102
naxler@axgolaw.com
mgoldich@axgolaw.con

Mitchell L. Paul
1845 Walnut Street, Suite 1199
Philadelphia, PA 19103
mpaul@paullaw.net

Samuel A. Dion
Dion & Goldberger
1845 Walnut Street, Suite 1199
Philadelphia, PA 19103
samueldion@aol.com


/s/ *Joel S. Allen*
Joel S. Allen