IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER WELLER, on behalf of himself and all others similarly situated,<br><br>  Plaintiff,<br><br>v.<br><br>DOLLAR GENERAL CORPORATION, DOLGENCORP, LLC,<br><br>  Defendants. | No. 5:17-2292-JLS |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT DOLGENCORP, LLC'S MOTION TO STAY CASE DEADLINES**

## I. Preliminary Statement

There is no need for a stay of the depositions Ordered by Magistrate Judge Rice on March 4, 2019. Defendants will suffer no prejudice if the depositions are allowed to take place, and a stay would only serve to endorse Defendants' past improper *ex parte* communications with putative class members and could permit them to continue such unethical conduct in the interim. Allowing Plaintiff to go forward immediately with the depositions of the putative class members who were interviewed by Defendants' counsel would serve to even the playing field and would ensure fairness in the determination of class certification in this matter.

## II. Relevant Background

On August 16, 2018, Plaintiff Christopher Weller filed a motion for class certification pursuant to and Rule 23 of the Federal Rules of Civil Procedure, as well as for conditional

1

certification under the FLSA (hereinafter "motion for class certification"). On October 18, 2018, Defendants Dollar General Corp. and Dolgencorp LLC (hereinafter "Defendants") filed a brief in opposition to Weller's motion for class certification. In support of their opposition, Defendants attached 20 declarations from previously undisclosed Dollar General employees, including 16 declarations from putative class members and 4 declarations from managerial employees. None of these declarants, including the 16 putative class members with whom Defendants had improper *ex parte* communications, were identified by Defendants as required by Rule 26(a)(1) and the declarations relied upon documents never identified or produced by Defendants to Plaintiff.

On November 1, 2018, Plaintiff filed a Motion to Strike and for Sanctions seeking to strike the declarations included in Defendants' response to their motion for class certification and for sanctions, on the basis that Defendants and their counsel improperly engaged in communications with putative class members in violation of Rule 4.2 of Pennsylvania's Professional Rules of Conduct and Rule 23 of the Federal Rules of Civil Procedure (hereinafter "motion to strike").

Plaintiff cited several opinions from courts in both the Commonwealth of Pennsylvania and the Eastern District of Pennsylvania which support the proposition that such contact with putative class members violated Rule 4.2 of the Pennsylvania Rules of Professional Conduct and the principles underlying Rule 23. Among the cases cited by Plaintiff were: 1) the Pennsylvania Supreme Court decision in *Bell v. Beneficial Consumer Discount Co.*, 465 Pa. 225, 229, 348 A.2d 734, 736 (1975)(which held that putative class members are "properly characterized as parties to the action."); 2) *Dondore v. NGK Metals Corp.*, 152 F. Supp. 2d 662, 666 (E.D. Pa. 2001) ("If defense counsel or counsel otherwise adverse to [the putative class members'

2

interests] is allowed to interview and take statements from often unsophisticated putative class members without the approval of counsel who initiated the actions, the benefits of class action litigation could be seriously undermined."); 3) *Gates v. Rohm and Haas Co.*, 2006 U.S. Dist. LEXIS 85562 *7 n.2 (E.D. Pa. Nov. 22, 2006) (prior to denial of certification, defense counsel is prohibited from contacting and interviewing potential witnesses who are putative class members); 4) *Braun v. Wal-Mart Stores, Inc.*, 2003 Pa. Dist. & Cnty. Dec. LEXIS 219 *6 & 7 (Phila. Ct. Com. Pl. Jan. 15, 2003) (in Pennsylvania, putative class members are represented parties and, therefore, defendant's counsel cannot interview or obtain affidavits from them).

The Court referred Plaintiff's motion to strike to Magistrate Judge Rice and, on March 4, 2019, Judge Rice issued a memorandum opinion confirming that Defendants were ". . . bound by law governing Rule 23 class actions in Pennsylvania . . ." and that Defendants' counsel ". . . improperly contacted and interviewed the 16 hourly employees at the Bethel Distribution Center, who were putative members of Weller's Fed. R. Civ. P. 23 class . . ." On March 4, 2019, Judge Rice issued an Order directing Plaintiff to depose the ". . . 16 hourly employees who signed declarations on behalf of [Defendants], as well as any other hourly employees interviewed by [Defendants'] counsel, to explore the issues raised in the declarations and Dolgencorp's response." Judge Rice's Order directed the parties to complete the additional discovery within 60 days and ordered Defendants pay to Plaintiff for any legal fees and costs associated with the depositions of the putative class members.

On March 8, 2019, Defendants filed a motion seeking a stay of the 60-day deadline for Plaintiff to complete the said depositions (Dkt. 68) ("motion to stay"), because they intend to file objections to Judge Rice's Memorandum Opinion pursuant to FRCP Rule 72(a) contending that

they will be unfairly prejudiced if they are prohibited from having *ex parte* communications about the case with putative class members.

### III. Argument

#### A. Defendants will not be Prejudiced if Judge Rice's Order is not Stayed

Defendants make the preposterous claim that they will be prejudiced if Judge Rice's Order for depositions is not stayed. Judge Rice ruled that Defendants' conduct violated Rule 4.2 of the Pennsylvania Rules of Professional Conduct and Rule 23. Defendants now argue that they would be prejudiced without a stay of that ruling because, in the interim, their ability to engage in the same unethical behavior that resulted in the sanctions here—communications with putative class members—would be "limited." Clearly, there can be no prejudice caused to Defendants by Judge Rice's Order. Judge Rice is not the first Judge to rule that a defendants' communications with putative class members are a violation of Pennsylvania law. As listed herein above, in the briefs supporting Plaintiff's motion to strike, and in Judge Rice's thorough decision, there are ample cases in this District and the Pennsylvania state courts that should serve to deter Defendants from engaging in such conduct. But, Defendants and their counsel are well aware of the violative nature of their conduct, as illustrated by (a) the website of defense counsel in this case containing a publication regarding *ex parte* communications acknowledging that Pennsylvania "recognizes an attorney-client relationship between a class lawyer and class members before certification."[1]; and (b) *Webster v. Dollar General*, 314 F.R.D. 367, 372 (D.N.J.

---

[1] Thomas E. Spahn, *Applying Abstract Ethics Rules in the Real World: Ex Parte Contacts and the Witness-Advocate Rule*, Hypotheticals and Analyses, McGuireWoods LLP, at 33 (March 14, 2013). http://media.mcguirewoods.com/publications/Ethics-Programs/40367186.pdf (last accessed November 20, 2018).

4

2016) (excluding declarations, assessing costs, allowing additional discovery, and administratively terminating Dollar General's summary judgement motion under Rule 37(c)(1), stating that Dollar General "may not conceal the identities of its own employee-witnesses" and that their "failure to provide any justification [for failure to disclose the names of declarants pursuant to FRCP 26(a)(1)], much less a convincing one, for their flagrant discovery violation" justified such sanctions).[2].

Despite this awareness and a history of being sanctioned for engaging in similar tactics, Defendants now seek to ask this Court to ignore the well-reasoned opinion of Judge Rice and, instead, allow them to continue their improper conduct.[3] Defendants' request makes little sense. Granting a stay in the context which Defendants request would effectively permit them to engage in the very conduct that Judge Rice deemed unethical. Regardless of whether the stay is granted, such continued conduct by Defendants would prejudice Plaintiff, cause irreversible harm to Plaintiff's ability to prosecute his case, and even risk further sanctions.

As to Defendants' argument that revealing the identities of putative class members would somehow implicate the work product doctrine, such argument is baseless. Defendants' desperation is evidenced by their reliance on the Third Circuit opinion in *United States v.*

---

[2] "In addition to or instead of exclusion, the Court may, among other things, 'order payment of the reasonable expenses, including attorney's fees, caused by the failure,' or may impose 'other appropriate sanctions' fit for the circumstances." *Webster v. Dollar Gen., Inc.*, 314 F.R.D. 367, 370 n.7 (D.N.J. 2016) (citing Fed. R. Civ. P. 37(c)(1)(A)-(C); Fed. R. Civ. P. 37(b)(2)(A)(i)-(iv) (providing a non-exhaustive lists of other appropriate sanctions)).

[3] Notwithstanding that Defendants' communications with putative class members are unethical and have been deemed so by Judge Rice, it bears noting that, assuming arguendo that *ex parte* communications were proper (they are undoubtedly not), the stay would still not result in prejudice to Defendants because this case has been pending for nearly two years, providing ample opportunity for a party to engage in such communications. Rather, as noted by Judge Rice, the fact that Defendants waited to do so only evidences their awareness that the communications were improper and prohibited. See page 6, fn. 3 of Judge Rice's Memorandum of March 4, 2019 (Doc. 63).

5

*Amerada Hess Corp*, 619 F.2d 980 (3rd Cir. 1980), which they misconstrue as barring production of all witness lists as protected work product. However, the *Amerada* Opinion clearly sets forth that:

> . . . neither the fact that the list was compiled by Milbank, nor the fact that it was attached to a report prepared in anticipation of possible litigation is dispositive [on the issue of application of the attorney work-product rule]. Rather, application of the rule depends upon the nature of the document, the extent to which it may directly or indirectly reveal the attorney's mental processes, the likely reliability of its reflection of witness' statements, the degree of danger that it will convert the attorney from advocate to witness, and the degree of availability of the information from other sources. In this case **the list of interviewees** is just that, a list. It does not directly or indirectly reveal the mental processes of the Milbank attorneys. It furnishes no information as to the content of any statement. There is no realistic possibility that its production will convert any member of the Milbank firm from advocate to witness.

*Amerada* at 987-988. Likewise, in the matter at bar, Judge Rice's Order requires Defendants only to identify all putative class members they interviewed. This list of interviewees ". . . does not directly or indirectly reveal the mental processes of the [Defendants'] attorneys." *Id*. Moreover, the work-product doctrine:

> . . . is intended "to protect material prepared by an attorney acting for his client in anticipation of litigation." *United States v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3d Cir. 1990); see also *United States v. Nobles*, 422 U.S. 225, 238 (1975) ("At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."). Notably, the doctrine does not extend to protect documents that were prepared "in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes.'" *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir.1993) (quoting Fed.R.Civ.P. 26(b)(3) advisory committee note).

*Craig v. Rite Aid Corporation*, 020912 PAMDC, 4:08-CV-2317 (United States District Court, M.D. Pennsylvania, February 9, 2012) at *12-13 (Unpublished Opinion attached as Exhibit A). The identities of putative class members interviewed by Defendants in preparation of its response in opposition to motion for class certification are not material prepared "in anticipation of litigation". Although the identification of putative class members that were improperly

6

interviewed or communicated with by defense counsel is required for Defendants to comply with Judge Rice's Order, a list of said identities would not amount to work product under any circumstance as it cannot possibly directly or indirectly reveal the mental processes of the Defendants' attorneys.

### B. Plaintiff will be Prejudiced if Judge Rice's Order is Stayed

Rather than strike the declarations, a sanction which Plaintiff advocated for and which would otherwise avoid issues relating to Defendants' wrongful solicitation from class members of statements against their interests as putative class members, Judge Rice Ordered that Plaintiff depose all of the putative class members interviewed by Defendants over the next 60 days. As Judge Rice wrote in his Memorandum Opinion: Defendants' ". . . communications with the putative class members prejudiced Weller because it allowed [Defendants, whom] already had some influence over the putative class members as their employer, to present the case in a way that may have been more favorable to [Defendants]." Although Plaintiff maintains that striking the declarations is the only way to fully undo the prejudice inflicted upon him by Defendants' improper communications, the relief provided by Judge Rice serves to level the playing field.

Plaintiff is not only entitled to depose these putative class members due to the circumstances caused by Defendants' prejudicial conduct, but would be entitled to the depositions under any circumstance. A delay in allowing the depositions will actually cause additional prejudice to Plaintiff because Defendants will have an opportunity to further exert influence upon these putative class members. Indeed, Defendants' motion is an expression of their intent to continue to exert such influence. Under the circumstances, the prejudice to Plaintiff has indeed been irreversible. Given Defendants' track record on this issue, the risk of

further prejudice to Plaintiff is simply too great to allow further delay in effecting Judge Rice's Order.

### C. The *Joseph* Briefs and Order Do Not Demonstrate a Likelihood of Success Regarding Defendants' Objections

Defendants' bold assertion that the party submissions regarding the *Joseph* case (Exhibit B to Defendants' motion) demonstrate a likelihood of success concerning its objections to Judge Rice's Order is misplaced. There was no opinion that sets forth the Court's reasoning in granting the motion to confirm the right of defendants to communicate with putative class members in *Joseph v. Quality Dining, Inc.*, No. 5:16-cv-1907-JVS (E.D. Pa.). As a result, the reasoning behind the Court's Order granting the relief requested by the *Joseph* defendant is unknown. Yet, to argue a likelihood of success, Defendants' counsel appear to imply that the *Joseph* defendants' reasoning was somehow adopted by the Court. In reality, there is nothing on the record in *Joseph* that could be persuasive to the Court regarding the present issues at bar. Such materials, completely devoid of reasoning or analysis and with no precedential or persuasive value, could not be used to persuade another Judge in this District and should not be persuasive here. Indeed, *Joseph* is not even an <u>unpublished</u> opinion.

Thus, the key factors to consider regarding likelihood of success of Defendants' Objections to Judge Rice's Memorandum and Order are: 1) the well-reasoned Memorandum Opinion filed by Judge Rice; and 2) the meaningful submissions from the parties in *this* matter, which Judge Rice considered. Nothing new has been brought to the table by Defendants.

### D. The Facts Herein do not Meet the Minimum Requirements for a Stay

Defendants cite as the standard of review for staying Orders of a Magistrate Judge pending a FRCP Rule 72 objection the following: "The Court must consider '(1) the likelihood of success on appeal; (2) the threat of irreparable harm if the stay or injunction is not granted; (3)

8

the absence of harm to opposing parties if the stay or injunction is granted; and (4) any risk of harm to the public interest."' *Faconnable v. USA Corp.*, No.: 11-CV-00941-CMA-BNB, 2011 WL 2173736, at *1(citing *F.T.C. v. Mainstream Marketing Services,* 345 F.3d 850, 852 (10th Cir. 2003). As already discussed in Section III(C) above, Defendants showed nothing new to support their contention that there is a likelihood of success regarding their objections. Likewise, Defendants failed to show that they would be irreparably harmed if the stay is not granted as set forth in Sections III(A and B) above. In fact, if a stay is granted, the only party that would be (again) prejudiced would be Plaintiff, in that Defendants would continue to be able to exert influence upon the putative class members in the absence of striking the declarations or the specific relief granted by Judge Rice, which was allowing the depositions of the putative class members that were interviewed by Defendants, as also set forth in Section III(A) above.

The remaining factor to consider is the risk to the public interest. Common sense dictates that, any time attorney ethics are in question, there is a risk to the public interest because if the bar compromises its ethics, then the public is the ultimate victim. If a stay is granted, there will be a continued risk to the public interest in that such a stay could serve to permit continued improper conduct by Defendants, which Judge Rice has already deemed impermissible.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to stay should be denied.

DATED: March 19, 2019                                    Respectfully Submitted,

s/ Samuel A. Dion
Samuel A. Dion
**DION & GOLDBERGER**
1845 Walnut Street, Suite 1199
Philadelphia, PA 19103
215-546-6033 (tel)
215-546-6269 (fax)
samueldion@aol.com

Mitchell L. Paul
1845 Walnut Street, Suite 1199
Philadelphia, PA 19103
215-546-6811(tel)
215-546-6812(fax)
mpaul@paullaw.net

Marc A. Goldich
Noah Axler
**AXLER GOLDICH LLC**
1520 Locust St., Suite 301
Philadelphia, PA 19102
Telephone: 267.534.7400
Facsimile: 267.534.7407
naxler@axgolaw.com
mgoldich@axgolaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that, on March 19, 2019, the foregoing Memorandum and supporting papers were filed electronically via the Court's ECF system. Notice of this filing will be sent to all parties who have appeared in this action via the Court's ECF system. Parties may access this filing through the Court's system.

s/ Samuel A. Dion<br>
Samuel A. Dion<br>
<b>DION & GOLDBERGER</b><br>
1845 Walnut Street, Suite 1199<br>
Philadelphia, PA 19103<br>
215-546-6033 (tel)<br>
215-546-6269 (fax)<br>
samueldion@aol.com