## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER WELLER, on behalf of himself and all others similarly situated, <br><br>      Plaintiff, <br><br>        v. <br><br> DOLLAR GENERAL CORPORATION, DOLGENCORP, LLC, <br><br>      Defendants. | **No. 5:17-2292-JLS** |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS
## TO THE MAGISTRATE JUDGE'S MARCH 4, 2019 ORDER

DATED: March 26, 2019

Respectfully submitted,

s/ Marc A. Goldich
Marc A. Goldich
Noah Axler
**AXLER GOLDICH LLC**
1520 Locust St., Suite 301
Philadelphia, PA 19102
Telephone: 267.534.7400
Facsimile: 267.534.7407
naxler@axgolaw.com
mgoldich@axgolaw.com

*Counsel for Plaintiff*

(Additional Counsel For Plaintiff Below)

## <u>TABLE OF CONTENTS</u>

I.     **INTRODUCTION** ................................................................................. 1

II.    **RELEVANT BACKGROUND** ........................................................... 2

    **A. DOLLAR GENERAL'S IMPROPER *EX PARTE* COMMUNICATIONS**....... 2

III.   **ARGUMENT**........................................................................................ 4

    **A. MAGISTRATE JUDGE RICE CORRECTLY RULED THAT DOLLAR GENERAL AND ITS COUNSEL VIOLATED RULE 4.2 BY CONTACTING PUTATIVE CLASS MEMBERS ABOUT THE LITIGATION** ............................. 4

      **1. COURTS IN THIS DISTRICT HAVE PROPERLY FOUND THAT PUTATIVE RULE 23 CLASS MEMBERS HAVE A SPECIAL INTEREST AFFORDING THEM THE PROTECTIONS OF RULE 4.2** .......................... 6

      **2. THE UNPUBLISHED *JOSEPH* ORDER IS UNAVAILING** ..................... 9

    **B. MAGISTRATE JUDGE RICE'S ORDER IS NOT CONTRARY TO SUPREME COURT PRECEDENT AND DOES NOT VIOLATE THE FIRST AMENDMENT** ................................................................................................. 10

    **C. THE SANCTIONS ISSUED BY MAGISTRATE JUDGE RICE ARE APPROPRIATE** ............................................................................................. 12

      **1. MAGISTRATE JUDGE RICE DID NOT ORDER DOLLAR GENERAL TO DISCLOSE ITS ATTORNEY WORK PRODUCT** ................................... 12

      **2. MAGISTRATE JUDGE RICE DID NOT ERR IN ORDERING DOLLAR GENERAL TO PAY PLAINTIFF'S LEGAL FEES AND COSTS** ............... 15

IV.   **CONCLUSION** .................................................................................. 17

## **TABLE OF AUTHORITIES**

### **Cases**

*Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 38 L. Ed. 2d 713, 94 S. Ct. 756 (1974).............. 7

*Belote v. Maritrans Operating Partners, L.P.*, No. 97-3993, 1998 U.S. Dist. LEXIS 3571 (E.D.
Pa. Mar. 20, 1998).............................................................................. 15

*Braun v. Wal-Mart Stores, Inc.*, 2003 Pa. Dist. & Cnty. Dec. LEXIS 219 (Phila. Ct. Com. Pl. Jan.
15, 2003) ............................................................................ 6, 7, 8, 16

*Craig v. Rite Aid Corporation*, 4:08-CV-2317 (M.D. Pa. February 9, 2012)............................. 12

*Dondore v. NGK Metals Corp.*, 152 F. Supp. 2d 662 (E.D. Pa. 2001).................................. passim

*Engage Healthcare Communs., LLC v. Intellisphere, LLC*, No. 12-cv-00787, 2017 U.S. Dist.
LEXIS 83068 (D.N.J. Feb. 10, 2017) ..................................................... 13

*Faloney v. Wachovia Bank*, N.A., 2008 WL 11366235 (E.D. Pa. July 28, 2008).......... 5, 8, 10, 11

*Fried v. SunGard Recovery Sys.*, No. 95-0878, 1995 U.S. Dist. LEXIS 2518 (E.D. Pa. Feb. 22,
1995) ....................................................................................... 10

*Gates v. Rohm and Haas Co.*, 2006 U.S. Dist. LEXIS 85562 (E.D. Pa. Nov. 22, 2006)...... passim

*Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981)............................................................... 11

*Hill v. St. Louis Univ.*, 123 F.3d 1114 (8th Cir. 1997)................................................ 16

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989)........................................... 13

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir.
1995) ...................................................................................... 7, 9

*Inorganic Coatings v. Falberg*, 926 F. Supp. 517 (E.D. Pa. 1995) ............................... 15

*Joseph v. Quality Dining, Inc.*, No. 5:16-cv-1907-JVS (E.D. Pa.)............................... 9, 10

*N.Y. Times Co. v. United States DOJ*, 138 F. Supp. 3d 462 (S.D.N.Y. 2015)...................... 13

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978).......................................... 13

*Penda Corp. v. STK, L.L.C.*, 2004 U.S. Dist. LEXIS 13577 (E.D. Pa. July 16, 2004)............... 15

*Reinig v. RBS Citizens, N.A.*, 2018 U.S. App. LEXIS 36714 (3d Cir. Dec. 31, 2018)................. 9

*Sig Swiss Indus. Co. v. Fres-Co Sys. USA, Inc.,* 1993 U.S. Dist. LEXIS 6388, 1993 WL 147241
(E.D. Pa. Apr. 30, 1993*)* ................................................................ 13

*Sporck v. Peil*, 759 F.2d 312 (3d Cir. 1985) .......................................................... 13

*United States v. Amerada Hess Corp*, 619 F.2d 980 (3d Cir. 1980)...................... 12, 13

*Univ. Patents, Inc. v. Kligman*, 737 F. Supp. 325 (E.D. Pa. 1990)................................................ 15

*Walney v. SWEPI LP*, 2017 U.S. Dist. LEXIS 8679 (W.D. Pa. Jan. 23, 2017).................... passim

*Webb v. Discover Prop. & Cas. Ins. Co.*, 2008 U.S. Dist. LEXIS 95431 (M.D. Pa. Nov. 24, 2008) ................................................................................................................................. 10

*Webster v. Dollar Gen., Inc.*, 314 F.R.D. 367 (D.N.J. 2016) ................................................... 3, 14

## <u>Other Authorities</u>

Fed.R. Civ. P. 23 ....................................................................................................................... passim

Fed. R. Civ. P 26 ................................................................................................................................ 3

Local Rule 83.6 ........................................................................................................................... 2, 6, 8

Rule 4.2 of Pennsylvania's Professional Rules of Conduct.................................................... passim

## I.      **INTRODUCTION**

On March 4, 2019, Magistrate Judge Rice found that Dollar General and its counsel engaged in improper *ex parte* communications with putative class members, which prejudiced Plaintiff by allowing Dollar General to present this case in a way that may have been more favorable to it and allowing it to use its influence to obtain self-serving declarations. In his well-reasoned and thoughtful opinion, the Magistrate Judge found that such communications violate Rule 4.2 of Pennsylvania's Professional Rules of Conduct and the principles of Rule 23 of the Federal Rules of Civil Procedure.  Now, despite wrongfully obtaining seventeen (17) declarations from putative class members and engaging in improper communications with an undisclosed number of others, Dollar General seeks to have this Court invalidate Magistrate Judge Rice's Opinion and, instead, condone its wrongful conduct; namely, improper and coercive *ex parte* communications with putative class members to elicit statements against their interest in this case and the ambush tactic of failing to ever disclose the identities of such "witnesses" or the existence of interviews or declarations.  These are clear cut ethical *and* discovery abuses which have prejudiced Plaintiff's ability to prosecute his case.

Dollar General's contention that it is not bound by Rule 4.2 or that the Rule otherwise does not apply here is a fabrication. Dollar General employs a strawman argument, mischaracterizing Plaintiff's briefs and Magistrate Judge Rice's Opinion, ignoring the controlling case law in Pennsylvania courts and in this District holding that defense counsel is barred from contacting putative class member employees regarding the subject matter of a lawsuit prior to a decision on certification – precisely what Dollar General did here.  As discussed below, these cases are good law.  Indeed, at least prior to filing their opposition in this case, Dollar General's own counsel believed these cases were still the controlling authority: their

firm's website boasts an article which warns that, in Pennsylvania, defendants are prohibited from contacting employee class members pre-certification.[1] Although it cannot dispute that Local Rule 83.6 incorporates by reference Rule 4.2 of the Pennsylvania Rules of Professional Conduct, Dollar General boldly contends that this Court should ignore the case law in this District interpreting it. The argument was flatly rejected by Magistrate Judge Rice and should be rejected by this Court as well.

Because it is clear that Dollar General engaged in wrongful conduct when it improperly contacted and interviewed putative class members, which violated Rule 4.2 of the Pennsylvania Rules of Professional Conduct, undermined the purposes of Rule 23, and unfairly prejudiced Plaintiff, this Court should affirm and accept Magistrate Judge Rice's March 4, 2019 Opinion in full. In the alternative, this Court should issue an order excluding the declarations submitted by Dollar General in support of its Response to Plaintiff's Motion for Class Certification and Conditional Collective Action Certification – the primary relief originally requested by Plaintiff.

## II.   <u>RELEVANT BACKGROUND</u>

### A.  **Dollar General's Improper *Ex Parte* Communications**

On October 18, 2018, Dollar General filed its Response to Plaintiff's Motion for Class Certification and Conditional Action Certification ("Response").  Dkt. 45. In support of its Response, Dollar General attached 20 declarations from previously undisclosed Dollar General employees,[2] including 17 declarations from putative class members and four declarations from

---

[1] http://media.mcguirewoods.com/publications/Ethics-Programs/40367186.pdf (last accessed November 20, 2018).

[2] As this Court is aware, during the course of discovery in this case, Dollar General has refused to (a) identify *any* employees at its Bethel distribution center; (b) produce Bethel employee files or other documents or information regarding Bethel employees; and (c) refused to produce time records other than for a small sample of *anonymous* Bethel employees.

previously undisclosed managerial employees. Dkt. 45-12 – 45-31.[3]  **Not one** of these declarants were ever disclosed or identified by Dollar General to Plaintiff as required by Rule 26(a)(1) of the Federal Rules of Civil Procedure.[4]  Indeed, Dollar General failed to identify any of the 20 declarants in its initial disclosures or supplements to the disclosures.[5]

To obtain the seventeen (17) declarations from putative class members, Dollar General's counsel engaged in *ex parte* communications with those individuals and an undisclosed number of other putative class members, all of whom lacked the benefit of counsel. The *ex parte* communications purportedly occurred in early September 2018 at Dollar General's Bethel facility.[6] It is still unknown by Plaintiff how many employees were contacted by Dollar General's counsel in connection with such interviews, the manner in which Dollar General or its

---

[3] Mr. Cullins was a supervisor at the time of his interview but had previously worked as an hourly employee, thus he is also a putative class member. Dollar General's counsel also submitted a declaration attaching 6 charts "summarizing" the putative class member testimony, which were also prepared by defense counsel. *See* Dkt. 45-2 through 45-7.

[4] Dollar General also submitted declarations from supervisory employees Marcus Cullins, Luke Ferguson, John Zappacosta, and Isaac Shockley.  None of these declarants were identified by Dollar General as required by Rule 26(a)(1) and, to make matters worse, the declarations relied upon documents never identified or produced by Dollar General to Plaintiff. 47-1, at 8-9. Magistrate Judge Rice found that Dollar General was not required to update its disclosures to identify Zappacosta, Ferguson, and Shockley because they had been made known to Plaintiff in other discovery and that, although it did not identify Cullins in other discovery, Dollar General "reasonably notified" Plaintiff of him by filing his declaration. Dkt. 63 at 8.  Plaintiff respectfully maintains that the non-disclosure of these witnesses and their reliance on documents that were improperly withheld during the course of discovery unfairly prejudice Plaintiff. *See Webster v. Dollar Gen., Inc.*, 314 F.R.D. 367, 372 (D.N.J. 2016) (Dollar General "may not conceal the identities of its own employee-witnesses" and that their "failure to provide any justification [for failure to disclose the names of declarants pursuant to FRCP 26(a)(1)], much less a convincing one, for their flagrant discovery violation" justified sanctions).

[5] On October 4, 2018, Dollar General served Plaintiff with its first and only privilege log. Without identifying key information such as author, recipient, date, and subject, the privilege log generally lists categories of documents that have been withheld by Dollar General, including but not limited to: "interviews regarding Plaintiff's claims and [Defendants'] defenses thereto and the defense of this litigation generally; "correspondence between managerial employees and in-house or outside counsel"; "witness interviews regarding Plaintiff's claims and Defendant's defense therof (if any) and the defense of this litigation generally"; "correspondence between Dollar General employees and in-house or outside counsel;" "Witness declarations prepared by McGuireWoods LLP and signed by current Dollar General employees at the Bethel, Pennsylvania distribution center." *See* Dkt. 47-3 (Privilege Log).

[6] Dkt. 69 at 4.

3

counsel solicited such interviews, and the number and identity of putative class members who declined to participate in such interviews. What is known is that the declarations procured by Dollar General were adverse to the interests of the putative class members, as the declarants were requested by defense counsel to provide sworn statements for Dollar General (their current employer) to use in defending the litigation and without neutral advisement as to Plaintiff's theory of the case. [7] Plaintiff's counsel was never identified to the putative class members, nor were the putative class members advised as to their right to counsel in connection with the *ex parte* investigations. *See* Dkt. 49-1; Dkt. 69 at 4-5.

## III.   ARGUMENT

### A. Magistrate Judge Rice Correctly Ruled That Dollar General And Its Counsel Violated Rule 4.2 By Contacting Putative Class Members About The Litigation

Although it boldly asks this Court to reject Magistrate Judge Rice's well-reasoned analysis, Dollar General provides nothing new to the discourse which even remotely warrants the Court overruling Magistrate Judge Rice. Indeed, Magistrate Judge Rice properly found that Dollar General "was bound by law governing Rule 23 class actions in Pennsylvania, and it was not permitted to communicate with the declarants". Dkt. 63 at 4. So, as it must, Dollar General

---

[7] Dollar General submitted the declarations to fabricate factual disputes (that otherwise do not exist in the record) regarding whether all employees were required to attend pre-shift meetings or whether there exist variations in the amount of pre-shift work performed. But such arguments are irrelevant and of little utility for purposes of certification because questions as to the validity of rounding rules are common to all class members. Dkt. 47-1 at 7, fn. 3. Nonetheless, the declarations indicate that the declarants indeed performed pre and post-shift work duties. *See* Dkt. 47-4 (Rivera-Vega Decl., ¶5 (driving a motorized vehicle from vehicle area to the start-up meeting prior to shift start time); Telford Decl., ¶ 6 (clocks in early, picks up equipment, and drives vehicle to start-up meeting all prior to shift start time); Dengler Decl., ¶¶9-10 (walks to start-up meeting, checks board, accesses equipment in locker). Without having been advised as to their legal rights, however, or to Plaintiff's theory of the case, many of the declarants executed statements under oath that were factually incorrect or misleading. Dkt. 47-1, at 6-7. The declarations reflect a mistaken statement or belief that the putative class members had not "worked" before or after the start of their shifts. *Id.*

once again implores this Court to reject controlling law.  This is because Dollar General cannot

dispute that the law governing Rule 23 class actions in Pennsylvania is that Rule 4.2 bars defense

counsel from contacting current or former employee class members regarding the subject matter

of the lawsuit prior to a decision on certification (unless accomplished via deposition or other

formal means of discovery with proper notice provided to the plaintiff's counsel). *See Gates v.*

*Rohm and Haas Co*., 2006 U.S. Dist. LEXIS 85562 *7 n.2 (E.D. Pa. Nov. 22, 2006) (prior to

denial of certification, defense counsel is prohibited from contacting and interviewing potential

witnesses who are putative class members); *Dondore v. NGK Metals Corp.*, 152 F. Supp. 2d 662,

666 (E.D. Pa. 2001) ("If defense counsel or counsel otherwise adverse to [the putative class

members' interests] is allowed to interview and take statements from often unsophisticated

putative class members without the approval of counsel who initiated the actions, the benefits of

class action litigation could be seriously undermined.");[8] *Walney v. SWEPI LP*, No. 13-102 Erie,

2017 U.S. Dist. LEXIS 8679, at *37 (W.D. Pa. Jan. 23, 2017) (citing *Dondore v. NGK Metals*

*Corp.*, 152 F.Supp. 2d 662, 666 (E.D. Pa. 2001) (holding that "putative class members stand at

least in a fiduciary relationship with class counsel")); *see also Faloney v. Wachovia Bank, N.A.*,

2008 WL 11366235 (E.D. Pa. July 28, 2008) (denying defendant's request to interview members

---

[8] In *Dondore*, this Court found that, absent consent from putative class counsel, defense counsel wishing
to interview a former managerial employee within that group must obtain court approval. *See id.* at *5.
The court insisted that the members of the putative class must be shielded from "defense counsel's
unsupervised efforts" and "make an intelligent and voluntary decision" whether to be represented by the
putative class or speak to and aid the former employer. *Id.* at *5-6. The Court suggested a procedure that
would strive to ensure the interests of all parties were served: (1) defense counsel must notify the court
and all interested parties of his or her desire to interview a former employee; (2) all counsel should
receive an opportunity to be heard; (3) if appropriate, the court may contact the potential witness,
explaining to him or her the nature of the action, his or her rights, and the request for an interview; (4) the
former employee must have the opportunity to consult with separate counsel; and (5) the former
employee must decide whether, and under what conditions, to grant the interview. *See id.* at *6. Here,
Defendants and their counsel intentionally bypassed the Court and failed to inform counsel for Plaintiff of
its intention to contact putative class members to procure statements against their interests to aid
Defendants' litigation strategy.

of a putative class action despite "no suggestion Wachovia or its counsel have engaged in, or would, engage in, any impropriety during this litigation").

Dollar General similarly cannot dispute that Local Rule 83.6 incorporates by reference the Pennsylvania Rules of Professional Conduct.  Dkt. 49 at 18. *See also Gates v. Rohm & Haas Co.*, No. 06-1743, 2006 U.S. Dist. LEXIS 85562, at *7 n.2 (E.D. Pa. Nov. 22, 2006) (barring defendants from contacting and interviewing putative class members, pursuant to Rule 4.2 and Local Rule 83.6). Yet, Dollar General argues that, although its counsel is required to comply with Rule 4.2, this Court should ignore the case law interpreting it. *Id.* This argument should be summarily rejected, as it was by Magistrate Judge Rice.

### 1.  Courts in this District Have Properly Found That Putative Rule 23 Class Members Have A Special Interest Affording Them The Protections of Rule 4.2

Dollar General attempts to argue that the question of whether it violated Rule 4.2 when it engaged in undisclosed *ex parte* communications with putative class members hinges on whether they are "parties" to the class action.  It contends that because putative class members are not "parties" to a class action prior to Rule 23 class certification, they cannot be deemed "represented" by putative class counsel and are therefore not entitled to the protections afforded by Rule 4.2.  Dollar General attempts to distinguish the controlling case law as relating to class actions under Pa. R. Civ. P. 1701, not Rule 23, and argues the distinction is dispositive as to whether a defendant may communicate about the case with opt-out class members. In particular, Dollar General argues that because *Braun v. Wal-Mart Stores, Inc.*, 2003 Pa. Dist. & Cnty. Dec. LEXIS 219 *6 & 7 (Phila. Ct. Com. Pl. Jan. 15, 2003) and *Dondore v. NGK Metals Corp.*, 152 F. Supp. 2d 662, 666 (E.D. Pa. 2001) were Pennsylvania state class actions, their holdings (that Rule 4.2 bars defense counsel in a class action from contacting current or former employee class

members regarding the subject matter of the lawsuit prior to a decision on certification) do not

apply here.  Magistrate Judge Rice rejected this erroneous argument, stating:

> Dolgencorp nonetheless maintains that <u>Dondore</u> and <u>Braun</u> are inapplicable here because they concerned class actions under Pa. R. Civ. P. 1701, not Fed. R. Civ. P. 23. The <u>Dondore</u> and <u>Braun</u> courts, however, did not rely on Rule 1701. Further, class actions brought under Pa. R. Civ. P. 1701 and Fed. R. Civ. P. 23 both require class members to opt out of the class and are governed by the rules of professional responsibility. In <u>Gates</u>, which involved a proposed Fed. R. Civ. P. 23 class action, the Court applied the same analysis to both claims. <u>Gates</u>, 2006 WL 3420591, *6 n.2; <u>see also</u> <u>Walney v. Swepi</u>, No. 13-102, 2017 WL 319801, *13 (W.D. Pa. Jan. 23, 2017) (finding a fiduciary relationship between class counsel and absent class members during the opt-out period).
>
> Accordingly, Dolgencorp's counsel improperly contacted and interviewed the 16 hourly employees at the Bethel Distribution Center, who were putative members of Weller's Fed. R. Civ. P. 23 class. If Dolgencorp was uncertain whether Pennsylvania law applied to its communication, it should have sought court authorization, or requested the information through formal discovery.

Dkt. 63 at 6.

Dollar General again implores this Court to ignore the relevant case law.  Dkt. 69 at 12-

13.  In so doing, Dollar General mischaracterizes *Dondore* and the reasoning it employed in

barring, pursuant to Rule 4.2, pre-certification communications by the defendant with putative

class members.  There, contrary to Dollar General's mischaracterization, this Court specifically

analyzed *federal law* stating:

> In the federal context, the Supreme Court has stated that a class action is "a truly representative suit" and that "class action representation" belongs to all parties, even "asserted class members who were unaware of the proceedings brought in their interest." *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 551-52, 38 L. Ed. 2d 713, 94 S. Ct. 756 (1974). Furthermore, putative class members stand at least in a fiduciary relationship with class counsel. *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995).

7

> The mere initiation of a class action extends certain protections to potential class members, who have been characterized by the Supreme Court as "passive beneficiaries of the action brought in their behalf." They have no "duty to take note of the suit or to exercise any responsibility with respect to it in order to profit from the eventual outcome" until the issue of class certification has been determined. *Am. Pipe & Constr. Co.*, 414 U.S. at 552. For example, the filing of a class action tolls the statute of limitations even for those who were unaware of the action and did not rely on it in refraining from filing their own motions for individual intervention or joinder. *Id.* at 551. Protecting the interests of putative class members in this manner is necessary to meet the goal of a class action lawsuit - to "provide[] a fair and efficient method for adjudication of the controversy." *Id.* (quoting Fed. R. Civ. P. 23(b)(3)).

*Dondore v. NGK Metals Corp.*, 152 F. Supp. 2d 662, 665 (E.D. Pa. 2001). Dollar General also advances no new argument to dispute that *Gates*,[9] *Walney*,[10] and *Faloney*[11] were Rule 23 cases that each relied upon or cited as authority *Dondore* or *Braun* or that Local Rule 83.6 incorporates by reference the Pennsylvania Rules of Professional Conduct, including Rule 4.2. There is no cogent reason to ignore the authority of this district interpreting Rule 4.2 and restricting pre-certification communications under Rule 23.

---

[9] *See* Objections at 13 (characterizing as "merely dicta" *Gates v. Rohm & Haas Co.*, No. 06-1743, 2006 U.S. Dist. LEXIS 85562, at *7 n.2 (E.D. Pa. Nov. 22, 2006), which barred defendants from contacting and interviewing putative class members, pursuant to Rule 4.2 and Local Rule 83.6).

[10] The Objections conspicuously *ignore* the holding of *Walney v. SWEPI LP*, No. 13-102 Erie, 2017 U.S. Dist. LEXIS 8679, at *37 (W.D. Pa. Jan. 23, 2017) that "putative class members stand at least in a fiduciary relationship with class counsel".

[11] *Id.* at 15 (acknowledging that *Faloney v. Wachovia Bank*, N.A., 2008 WL 11366235 (E.D. Pa. July 28, 2008) denied defendant's request to interview members of a putative class action despite "no suggestion Wachovia or its counsel have engaged in, or would, engage in, any impropriety during this litigation"). Indeed, in *Faloney*, this Court denied the defendant's **request** to communicate with putative class members, and specifically declined the defendant's invitation to reject *Dondore*, stating "given [the Court's] resolution of this issue, [it] need not address whether Wachovia's contact would violate Pennsylvania Rule of Professional Conduct 4.2." *Id.* (citing *Dondore v. NGK Metals Corp.*, 152 F. Supp. 2d 662 (E.D. Pa. 2001)) (Bartle, C.J.). Notably, unlike here where Dollar General disregarded Rule 4.2 entirely and unilaterally contacted putative class members without seeking leave of the Court, the defendant in *Faloney* sought this Court's approval **before** contacting putative class members.

Dollar General's continued reliance on *Reinig v. RBS Citizens, N.A.*, No. 17-3464, 2018 U.S. App. LEXIS 36714 (3d Cir. Dec. 31, 2018) does nothing to change the equation. There, the Third Circuit observed that "class certification under Rule 23 and collective action certification under the FLSA are not sufficiently similar or otherwise 'inextricably intertwined' to justify exercise of pendent appellate jurisdiction." *Id*. at *27. The *Reinig* decision did not involve Rule 4.2 or any set of facts concerning the propriety of a defendant's attempts to communicate with putative class members without seeking permission from the court or disclosing its intent to the court and parties. Thus, *Reinig* does not conflict with the authority cited by Plaintiff. Indeed, the case law makes clear that this district has acknowledged that putative class members have a special interest in the litigation and a special relationship with counsel prior to certification. *Walney v. Swepi*, No. 13-102, 2017 WL 319801, *13 (W.D. Pa. Jan. 23, 2017) ("putative class members stand at least in a fiduciary relationship with class counsel"); *Dondore v. NGK Metals Corp.*, 152 F. Supp. 2d 662, 665 (E.D. Pa. 2001) (same); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995) (same). Magistrate Judge Rice was not moved by Dollar General's misplaced reliance on *Reinig* and this Court should similarly dismiss the erroneous argument.

### 2.  The Unpublished *Joseph* Order Is Unavailing

Dollar General's reliance on the party submissions in *Joseph v. Quality Dining, Inc.*, No. 5:16-cv-1907-JVS (E.D. Pa.) is misplaced. There was no opinion that sets forth the Court's reasoning in granting the motion to confirm the right of defendants to communicate with putative class members in *Joseph* and, as a result, the Court's reasoning is unknown. Yet, Dollar General argues that the *Joseph* defendants' reasoning was somehow adopted by the Court. But, there is nothing on the record in *Joseph* that could be persuasive regarding the present issues at bar.

9

Such materials, completely devoid of reasoning or analysis and with no precedential or persuasive value, could not be used to persuade another Judge in this District and should not be persuasive here. Indeed, *Joseph* is not even an <u>unpublished</u> opinion.[12]

### B.  Magistrate Judge Rice's Order Is Not Contrary To Supreme Court Precedent And Does Not Violate The First Amendment

Next, Dollar General appears to argue that Magistrate Judge Rice "impos[ed] a complete ban on all pre-certification communications between defense counsel and putative class members [which is a] restraint on Dollar General's and its counsel's First Amendment rights."  Dkt. 69 at 15.  However, neither the Opinion nor the Order contain such a prohibition.  Indeed, Magistrate Judge Rice merely found that "counsel improperly contacted and interviewed the 16 hourly employees at the Bethel Distribution Center, who were putative members of Weller's Fed. R. Civ. P. 23 class." Dkt. 63 at 6.  At best, Magistrate Judge Rice's Order only affirms the ban on *ex parte* contact contained in Rule 4.2 and the case law of this district interpreting it, not a limitation of Dollar General's right as an employer to communicate with its employees relating

---

[12] For the first time, Dollar General cites two other district court cases from this circuit, *Fried v. SunGard Recovery Sys.*, No. 95-0878, 1995 U.S. Dist. LEXIS 2518, at *1 (E.D. Pa. Feb. 22, 1995) and *Webb v. Discover Prop. & Cas. Ins. Co.*, No. 3:08cv1607, 2008 U.S. Dist. LEXIS 95431 (M.D. Pa. Nov. 24, 2008). The former was a one sentence order from 1995 predating the well-reasoned opinions of *Dondore*, *Gates*, *Walney*, and *Faloney*, the controlling authority here. The latter involved a request from the plaintiff to have the court issue an order affirmatively limiting the defendants' contact with putative class members *even though there was no allegation that* such contact had occurred. There, the court did **not** endorse *ex parte* communications but, rather, found that there were no "allegations of abuse -- from which we can make specific findings with regard to the defendants' contact with the putative class members." *Webb v. Discover Prop. & Cas. Ins. Co.*, No. 3:08cv1607, 2008 U.S. Dist. LEXIS 95431, at *9 (M.D. Pa. Nov. 24, 2008) (citing *In re School Asbestos Litigation*, 842 F.2d 671, 681 (3d Cir. 1988)). Indeed, if anything, the *Webb* decision stands for the proposition that the court has the authority under Rule 23 to fashion a remedy to "correct the effects of improper conduct" such as a defendant's communications with putative class members, if there existed evidence that such abuse had occurred. Dollar General would have cited these cases in its earlier briefing if they held any weight.  But the cases only serve to illustrate desperation, as neither *Fried* nor *Webb* provide any reason, let alone authority, to disrupt Magistrate Judge Rice's opinion.

to their employment and job duties.

Moreover, although it originally argued that *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981) does not bar it from having *ex parte* communications about the case with putative class members, Dollar General backpedals, observing that "[c]onsistent with established precedent, this Court has frequently applied the *Gulf Oil* principles when ruling on whether to restrict pre certification communications between a party's counsel and Fed. R. Civ. P. 23 putative class members." Dkt 69 at 15. Dollar General now contends that, although *Gulf Oil* does not conflict with the prohibition, Magistrate Judge Rice's Order was not based upon a "clear record" or "likelihood of serious abuses" and was not "carefully drawn" enough to satisfy it. Tellingly, however, Dollar General cites *Faloney v. Wachovia Bank, N.A.*, 2008 WL 11366235, at *1 (E.D. Pa. July 28, 2008) for this proposition. *Id.* In *Faloney*, this Court denied Wachovia's request to interview members of a putative class action despite no clear record, no likelihood of serious abuses, and "no suggestion Wachovia or its counsel have engaged in, or would, engage in, any impropriety during this litigation". *Faloney v. Wachovia Bank*, N.A., 2008 WL 11366235 (E.D. Pa. July 28, 2008). Indeed, unlike here where Dollar General disregarded Rule 4.2 entirely and unilaterally contacted putative class members without seeking leave of the Court, the defendant in *Faloney* sought this Court's approval *before* attempting to contact putative class members. *Faloney v. Wachovia Bank, N.A.*, 2008 WL 11366235, *1-*2 (E.D. Pa. July 28, 2008) (relying on *Gulf Oil* to prohibit *ex parte* communication between defense counsel and putative class members because it could confuse unsophisticated class members). Surely, if Magistrate Judge Rice's opinion in *Faloney* satisfied *Gulf Oil*, so too does his ruling here.

**C. The Sanctions Issued By Magistrate Judge Rice Are Appropriate**

    **1. Magistrate Judge Rice Did Not Order Dollar General To Disclose Its Attorney Work Product**

In authorizing Plaintiff to take the depositions of "other putative class members interviewed by [Dollar General's] counsel", including individuals who were interviewed but from whom declarations were not obtained, Magistrate Judge Rice did not implicate Dollar General's attorney work product. Dkt. 64, ¶ 3. The futility of Dollar General's attempt to fit a square peg into a round hole is illustrated best by its misplaced reliance on the Third Circuit opinion in *United States v. Amerada Hess Corp*, 619 F.2d 980 (3rd Cir. 1980), which Dollar General misconstrues as barring production of all witness lists as protected work product. To the contrary, the *Amerada* Opinion clearly sets forth that:

> . . . neither the fact that the list was compiled by Milbank, nor the fact that it was attached to a report prepared in anticipation of possible litigation is dispositive [on the issue of application of the attorney work-product rule]. Rather, application of the rule depends upon the nature of the document, the extent to which it may directly or indirectly reveal the attorney's mental processes, the likely reliability of its reflection of witness' statements, the degree of danger that it will convert the attorney from advocate to witness, and the degree of availability of the information from other sources. In this case **the list of interviewees** is just that, a list. It does not directly or indirectly reveal the mental processes of the Milbank attorneys. It furnishes no information as to the content of any statement. There is no realistic possibility that its production will convert any member of the Milbank firm from advocate to witness.

*Amerada* at 987-988. Likewise, here, Magistrate Judge Rice's Order requires that Dollar General only identify all putative class members that its counsel interviewed. This list of interviewees ". . . does not directly or indirectly reveal the mental processes of the [Defendants'] attorneys." *Id*. Moreover, the work-product doctrine:

> . . . is intended "to protect material prepared by an attorney acting for his client in anticipation of litigation." *United States v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3d Cir. 1990); see also *United States v.*

12

> *Nobles*, 422 U.S. 225, 238 (1975) ("At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."). Notably, the doctrine does not extend to protect documents that were prepared "in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes.'" *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir.1993) (quoting Fed.R.Civ.P. 26(b)(3) advisory committee note).

*Craig v. Rite Aid Corporation*, 020912 PAMDC, 4:08-CV-2317 (United States District Court, M.D. Pennsylvania, February 9, 2012) at *12-13.[13]  The identities of putative class members interviewed by Dollar General in preparation of its response in opposition to motion for class certification are not material prepared "in anticipation of litigation".[14]  Although the identification of putative class members that were improperly interviewed or communicated with by defense counsel is required for Dollar General to comply with Magistrate Judge Rice's Order,

---

[13] It also bears noting that "[b]oth the Supreme Court and the Court of Appeals for the Third Circuit have held that the names and addresses of putative class members are discoverable." *Id.* (*citing Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989), *aff'g* 862 F.2d 439 (3d Cir. 1988); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 354 n.20 (1978)).

[14] The cases cited by Dollar General are inapposite.  *See Sporck v. Peil*, 759 F.2d 312, 319 (3d Cir. 1985) (regarding the identification of documents selected by counsel, not a list of witnesses); *United States v. Amerada Hess Corp.*, 619 F.2d 980, 988 (3d Cir. 1980) (list of employees interviewed, selected out of all the corporation's employees, is **not** opinion work product); *N.Y. Times Co. v. United States DOJ*, 138 F. Supp. 3d 462, 472 (S.D.N.Y. 2015)(relating to witness statements and interview notes, not list of witnesses). Dollar General's reliance on *Sig Swiss Indus. Co. v. Fres-Co Sys.*, USA, Inc., 1993 U.S. Dist. LEXIS 6388, 1993 WL 147241 (E.D. Pa. Apr. 30, 1993*)* is similarly misplaced. In *Sig Swiss*, the plaintiff sought to compel defendants to disclose certain proposed trial exhibits. This Court denied the motion because "the process of choosing witnesses and evidence to present at trial involves the mental impressions and strategic processes of an attorney, and as such is protected under the work product doctrine."  As the court in *Engage Healthcare Communs., LLC v. Intellisphere, LLC*, No. 12-cv-00787, 2017 U.S. Dist. LEXIS 83068, at *30 (D.N.J. Feb. 10, 2017) observed, "[t]hat, however, does not equate to permitting a party withhold the identity of the various witnesses and documents that support their claims. Indeed, if that were the case, virtually all discovery would constitute work product because almost every document production involves the counsel for the producing party making a substantive determination from the documents provided by the client as to which are responsive and which are not." *See Engage Healthcare Communs., LLC v. Intellisphere, LLC*, No. 12-cv-00787, 2017 U.S. Dist. LEXIS 83068, at *30 (D.N.J. Feb. 10, 2017) (distinguishing *Sig Swiss Indus. Co. v. Fres-Co Sys., USA, Inc.*, 1993 U.S. Dist. LEXIS 6388, 1993 WL 147241 (E.D. Pa. Apr. 30, 1993).

a list of said identities would not amount to work product under any circumstance as it cannot

possibly directly or indirectly reveal the mental processes of Dollar General's attorneys.

As this Court is well-aware, during the course of discovery in this case, Dollar General

has refused to (a) identify *any* employees at its Bethel distribution center; (b) produce Bethel

employee files or other documents or information regarding Bethel employees; and (c) refused to

produce time records other than for a small sample of *anonymous* Bethel employees.  Given this,

and the fact that this Court and the parties agreed that Plaintiff's motion for class certification

would be based on the results of that sample of *anonymous* time records, the specific and

intentional *ex parte* communications with putative class members was undeniably done in

obvious anticipation of ambushing Plaintiff in its opposition to class certification. Under these

circumstances, Dollar General should not be rewarded with inapplicable work product protection

for its "carefully timed and strategically planned" scheme to obtain declarations from "certain

employees whom defense counsel determined would be beneficial" to its defense.  Dkt. 69 at 20-

21. Indeed, the federal rules prohibit such tactics, and the remedy should instead be to deny

Dollar General the benefits of its own misbehavior.[15] Dollar General wrongfully procured the

declarations in violation of Rule 4.2 and Rule 23 and, to the extent the declarations are not

stricken, this Court should adopt Magistrate Judge Rice's ruling allowing Plaintiff to depose the

putative class members that were interviewed by Dollar General so that he may "explore the

issues raised in the declarations and [Dollar General's] response."  Dkt. 63 at 9.

---

[15] "In addition to or instead of exclusion, the Court may, among other things, 'order payment of the reasonable expenses, including attorney's fees, caused by the failure,' or may impose 'other appropriate sanctions' fit for the circumstances." *Webster v. Dollar Gen., Inc*., 314 F.R.D. 367, 370 n.7 (D.N.J. 2016) (citing Fed. R. Civ. P. 37(c)(1)(A)-(C); Fed. R. Civ. P. 37(b)(2)(A)(i)-(iv)). As was the case in *Webster*, here, each of the factors weigh in favor of exclusion, expenses, and fees.

2.   **Magistrate Judge Rice Did Not Err In Ordering Dollar General To Pay Plaintiff's Legal Fees And Costs**

Dollar General argues that, in imposing monetary sanctions against it, Magistrate Judge Rice incorrectly relied on the four-factor test for a discovery violation under Rule 37.  Dkt. 69 at 22.  Dollar General, however, fails to recognize that it committed a discovery violation when it procured declarations as a result of improper *ex parte* communications with putative class members and that Magistrate Judge Rice properly utilized the four-factor test to determine whether to exclude the wrongfully procured declarations.

In any event, although Rule 4.2 contains no provisions regarding remedies for violations of the rule, federal courts have the inherent power to discipline attorneys practicing before them. *Penda Corp. v. STK, L.L.C.*, Nos. 03-5578, 03-6240, 2004 U.S. Dist. LEXIS 13577, at *18-22 (E.D. Pa. July 16, 2004) (citing *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 160 (3d Cir. 1984). Courts have broad discretion in fashioning an appropriate penalty or sanction to discipline attorneys and remedy the problems caused by improper *ex parte* contacts. *Id.* (citing *In re Abrams*, 521 F.2d 1094, 1099 (3d Cir. 1975); *Univ. Patents, Inc. v. Kligman*, 737 F. Supp. 325, 329 (E.D. Pa. 1990)). Courts have fashioned various remedies for violations of Rule 4.2: preclusion of the use of the evidence and information obtained through such *ex parte* communication; requiring the production of all work product related to or generated as a result of the prohibited contact; disqualification of the offending attorney(s); the awarding of fees; and, in exceptional cases, dismissal of the pending litigation. *See Penda Corp.* 2004 U.S. Dist. LEXIS 13577, at *19 (preclusion of evidence); *Belote v. Maritrans Operating Partners, L.P.*, No. 97-3993, 1998 U.S. Dist. LEXIS 3571 at *21 (E.D. Pa. Mar. 20, 1998); *Kligman*, 737 F. Supp. at 328 (production of work product); *Inorganic Coatings v. Falberg*, 926 F. Supp. 517, at *521

15

(E.D. Pa. 1995) (disqualification of counsel); *Hill v. St. Louis Univ.*, 123 F.3d 1114, 1121 (8th Cir. 1997) (affirming award of fees in preparing sanctions motions).

Here, the Magistrate Judge specifically found that Dollar General's counsel "knew or should have known" that its conduct was wrongful and violative of Rule 4.2 and Rule 23. Dkt. 63 at 9.[16] The Opinion rightfully acknowledged that Dollar General's *ex parte* communications with putative class members prejudiced Plaintiff "because it allowed [Dollar General], which already had some influence over the putative class members as their employer, to present the case in a way that may have been more favorable to it." Dkt. 63 at 8. Indeed, the natural implication of executing a statement that will assist one's employer is that the statement serves as a boon to the employer. Implicitly, by benefiting the employer, the putative class member's standing with the employer improves as well. Faced with the choice as presented by Dollar General's counsel of assisting one's employer, or siding with a former employee and whose counsel is nowhere in sight (let alone disclosed or identified), the conflict is intractable even for putative class members who wish to remain silent on the matter. *See Braun,* 2003 Pa. Dist. & Cnty. Dec. LEXIS at \*6 ("[I]t would be hard to find a more challenging conflict for a current employee to be placed in than to be interviewed by counsel for their current employer concerning allegations about work places abuses.").

Thus, it is not only those who submitted declarations who may have been chilled from participating in the litigation, but countless other putative class members that were interviewed or contacted by counsel as well. The context of such interviews is telling. Such interviews were conducted by Dollar General's counsel, presumably during work hours, at the Bethel distribution

---

[16] Although Magistrate Judge Rice did not find "bad faith", such a finding would be more than justified here given, among other things, the prior awareness of counsel that *ex parte* contact was improper, and the deliberate ambush tactic employed by Dollar General in an effort to obtain litigation advantage.

center, to assist in the defense of the action. Dkt. 69, at 4-5. An unknown number of putative

class members were solicited directly by Dollar General's counsel. The specter of the lawsuit has

therefore spread throughout the facility, by word of mouth or otherwise, potentially rife with

misunderstandings and inhibiting this Court's ability "to protect class members and fairly

conduct the action." Fed. R. Civ. P. 23(d)(1)(B). Accordingly, given the abusive and improper

behavior knowingly and intentionally (let alone "deliberately" and "strategically")[17] conducted

by Dollar General and its counsel in the Rule 23 context, the relief afforded by Magistrate Judge

Rice is more than justified.[18]

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny Dollar General's Objections to

Magistrate Judge Rice's March 4, 2019 Order and affirm and accept Magistrate Judge Rice's

March 4, 2019 Order in its entirety.[19]

Respectfully Submitted,

<u>s/ Marc A. Goldich</u>
Marc A. Goldich
Noah Axler
**AXLER GOLDICH LLC**
1520 Locust St., Suite 301
Philadelphia, PA 19102
Telephone: 267.534.7400
Facsimile: 267.534.7407
naxler@axgolaw.com
mgoldich@axgolaw.com

Samuel A. Dion
**DION & GOLDBERGER**
1845 Walnut Street, Suite 1199

---

[17] Dkt. 69, at 20.
[18] Indeed, as set forth at length in Plaintiff's underlying briefs, the conduct at issue here would justify striking and excluding each of the declarations submitted by Dollar General. Dkt. 47-1; Dkt. 50.
[19] In the alternative, this Court should grant Plaintiff's Motion to Strike and For Sanctions and strike and exclude the undisclosed and improperly obtained declarations.

Philadelphia, PA 19103
215-546-6033 (tel)
215-546-6269 (fax)
samueldion@aol.com

Mitchell L. Paul
1845 Walnut Street, Suite 1199
Philadelphia, PA 19103
215-546-6811(tel)
215-546-6812(fax)
mpaul@paullaw.net
*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on March 26, 2019, the foregoing was filed electronically via the Court's ECF system.  Notice of this filing will be sent to all parties who have appeared in this action via the Court's ECF system.  Parties may access this filing through the Court's system.

<u>s/ Marc A. Goldich</u>