IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTOPHER WELLER, on behalf of himself and all others similarly situated, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 5:17-cv-02292-JLS |
| DOLLAR GENERAL CORPORATION, DOLGENCORP, LLC, | § § § § | |
| Defendants. | § § | |

## JOINT MOTION FOR FLSA SETTLEMENT APPROVAL

Plaintiff Christopher Weller ("Plaintiff") and Defendants Dolgencorp, LLC and Dollar General Corporation (collectively, "Defendants"), through their counsel, jointly move the Court to enter an order approving the proposed settlement agreement between Plaintiff and Defendants. In support of this Joint Motion, the Parties state as follows:

### I.  INTRODUCTION

Plaintiff and Defendants jointly request that the Court enter an order approving the settlement agreement (the "Settlement Agreement") reached between the Parties in resolution of a *bona fide* dispute regarding Plaintiff's asserted entitlement to damages under the Fair Labor Standards Act ("FLSA") and related claims under Pennsylvania state law. After litigating this case for several years, which included a failed bid for class certification and conditional collective certification, the Parties have carefully and exhaustively negotiated a settlement in this action. They have agreed to resolve the disputed factual and legal issues on terms set forth in the Settlement Agreement, which is being submitted to the Court for review.

The Agreement is fair and should be approved as it provides real monetary relief to Plaintiff for claims asserted by way of this current litigation. The Agreement reflects reasonable

compromises of issues actually in dispute, was reached in an adversarial context in which the Plaintiff was represented by competent and experienced counsel, and is fair and reasonable in its totality. For these reasons, and the reasons set forth more fully below, the Parties jointly request that the Court enter an Order approving the Settlement Agreement.

## II.     RELEVANT BACKGROUND

On May 18, 2017, Plaintiff commenced an action against Defendants alleging, among other things, violations of the Fair Labor Standards Act ("FLSA") as well as parallel claims under the Pennsylvania Minimum Wage Act ("PMWA"), the Pennsylvania Wage Payment and Collection Law ("PWPCL"), and Pennsylvania common law, (collectively, the "Pennsylvania State Law Claims"). Dkt. 1, ¶¶ 54–71 (Counts I-III) and Count IV. Specifically, Plaintiff alleges that, while employed by Dollar General, he performed work while off-the-clock pre-shift, post-shift, and during meal breaks, and thus is entitled to receive certain unpaid minimum and overtime wages for the time allegedly worked off-the-clock. Dkt. 23, ¶¶ 20–47. Plaintiff also alleges that Dollar General's rounding practice "systematically results in under-recording the actual time worked on the clock" by Plaintiff. *Id.* at ¶ 3.

After completing class discovery and certification motion briefing, the Court entered an order on March 2, 2022 denying Plaintiff's Motion for Class Certification and Conditional Collective Action Certification. Dkt. 108. With respect to Plaintiff's time-clock rounding claims, the Court held that Plaintiff erroneously assumed that employees were actually working during the pre-shift time that was allegedly "rounded away." *Id.* at 27. Rather, Plaintiff's proffered statistics merely prove that "employees are compensated for less time than they are clocked in, not that they are compensated for less time than they actually worked." *Id.* Based on Dollar General's evidence that showed employees engaging in a variety of different activities during their pre- and post-shift

time (most of which were not compensable), the Court concluded that individualized inquiries into each employee's pre-shift and post-shift activities and habits would predominate over common questions, thus making collective and class certification inappropriate. *Id.* at 28–32.

Subsequently, the Parties negotiated a private settlement of all disputes between Plaintiff and Defendants, including the FLSA claims asserted in the operative Complaint. The Parties have prepared a Confidential Settlement Agreement and Mutual Release of Claims (the "Settlement Agreement") to provide, among other things, for a reasonable settlement payment, a full discharge of all of Plaintiff's claims against Defendants, and a full discharge of all of Defendants' claims against Plaintiff. A copy of the Settlement Agreement is attached hereto as **Exhibit 1**.

## III.   LEGAL ANALYSIS

### A.   Applicable Legal Standard.

Employees can settle and release claims under the FLSA in two ways. First, the FLSA allows employees to settle and waive their claims if the compromise is supervised by the Secretary of Labor. 29 U.S.C. § 216(c); *Mako v. Anastasia Care Services, LLC*, 2020 WL 919731, at *1 (E.D. Pa. Feb. 26, 2020) (citing *Kraus v. PA Fit II, LLC*, 155 F. Supp.3d 516, 522 (E.D. Pa. 2016)). Second, in the context of a private lawsuit brought by an employee against an employer under § 216(b), an employee may settle and release FLSA claims against an employer if the parties present the district court with a proposed settlement, and the district court enters an order approving the fairness of the settlement. *Id.*

Entry of a stipulated settlement agreement is appropriate when there is a "bona fide dispute" over FLSA provisions, and the proposed settlement is a "fair and reasonable" resolution of that dispute. *Lovett v. Connect America.com*, 2015 WL 5334261, at *3 (E.D. Pa. Sept. 14, 2015); *Mako*, 2020 WL 919731, at *1-2; *Kraus*, 155 F. Supp.3d at 522. District courts in the Third

Circuit generally consider the following factors when determining whether an FLSA settlement is "fair and reasonable": "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Mako*, 2020 WL 919731, at *2 (citing *Brumley v. Camin Cargo Control, Inc.*, 2012 WL 1019337, at *4-5 (D.N.J. March 26, 2012)). When evaluating the fairness of the Settlement Agreement under these factors, the Court should bear in mind that Plaintiff is settling his individual claims, and not on behalf of a collective or class. *See Lyons v. Gerhard's Inc.*, 2015 WL 4378514, at *4 (E.D. Pa. July 16, 2015).

      **B.**      **Existence of Bona Fide Dispute.**

There is a "bona fide dispute" as to whether Defendants are liable to Plaintiff under the FLSA and the Pennsylvania State Law Claims. In the Complaint, Plaintiff alleges that he performed work while off-the-clock pre-shift, post-shift, and during meal breaks, and that Dollar General's rounding practice resulted in "a systematic underpayment of time worked" by Plaintiff. Defendants deny that Plaintiff was not compensated for work he performed. In particular, Defendants alleged that their policies specifically and unequivocally prohibit hourly employees from working while off-the-clock, and Plaintiff was aware of such policies and signed written acknowledgments confirming his understanding of Defendants' policies. Defendants also have alleged additional defenses to Plaintiff's claims, including, *inter alia*, unclean hands, lack of knowledge by Defendants, lack of willfulness by Defendants, a failure of Plaintiff to take

4

advantage of corrective opportunities, Defendants' reliance on the Portal-to-Portal Act in deeming preliminary and postliminary activities as non-compensable under the FLSA, and Defendants' reliance on regulations promulgated by the U.S. Department of Labor approving time-rounding practices like the ones utilized by Defendants.

Through settlement negotiations, the Parties have discussed the general outline of the case and arguments each Party would anticipate making at summary judgment and trial. These meetings have been candid and of adequate length to determine the relative strengths and weaknesses of each Party's position. The Parties have also exchanged their respective exposure analysis, which were calculated based on reviewing Plaintiff's employment history and wage and time records. The Parties continue to disagree as to whether off-the-clock wages are owed to Plaintiff and whether Defendants' rounding practice is lawful under the FLSA. Thus, there is a "bona fide dispute" as to Defendants' liability to Plaintiff under the FLSA.

    **C.**    **Fair and Reasonable Settlement.**

In the present case, the Settlement Agreement reached by the Parties is fair, reasonable, and should be approved by the Court.

    1.  <u>Complexity, Expense and Likely Duration of the Litigation.</u>

The Parties reached the settlement after exchanging and evaluating information pertinent to Plaintiff's claims. By resolving the case in this fashion, the Parties were able to avoid the expense of further discovery and litigation, including summary judgment proceedings, pretrial requirements, trial preparation, and trial. Summary judgment and trial proceedings will require extensive testimony related to Plaintiff's job duties and work-related practices on each day that Plaintiff alleges to have performed off-the-clock work, and could also potentially involve dueling expert testimony on both sides analyzing time and pay records spanning Plaintiff's period of

employment which lasted about 19 months.  In light of the total damages at issue with respect to Plaintiff's individual claims—according to Plaintiff's expert's analysis of time records, Plaintiff's "total net time lost was 2,509 minutes (42 hours)"—when compared to the complexity, expense, and likely duration of this litigation through trial should a settlement not have been reached, this factor weighs heavily in favor of finding that this Settlement Agreement is a reasonable compromise of the issues in dispute.  The Settlement Agreement eliminates the expenditures of significant resources on experts' and attorneys' fees and further eliminates any inherent risks both sides would bear if this case were to continue.

2. Reaction of the Class to the Settlement.

After more than four years of litigation, not a single current or former Dollar General employee ever opt-ed into this case.  In light of the Court's denial of class action and collective action certification, and the fact that the Settlement Agreement only resolves disputes between Plaintiff and Dollar General, this factor weighs in favor of finding the Settlement Agreement is a fair and reasonable compromise of the disputes between Plaintiff and Defendants.

3. Stage of the Proceedings and the Amount of Discovery Completed.

The Parties reached this settlement after the Court denied Plaintiff's Motion for Class Certification and Collective Action Certification and before the Parties commenced summary judgment briefing.  Prior to the Court's certification ruling, the Parties spent over a year engaging in discovery.  Plaintiff propounded approximately 185 written discovery requests to Dollar General.  *See* Dkt. 100-1 (Declaration of Joel S. Allen), ¶ 2.  Dollar General produced thousands of pages of documents, as well as multiple productions of ESI collected (per Plaintiff's request) from 15 Dollar General custodians (including corporate level and local human resources and operational managers) using negotiated and mutually agreed upon search terms.  *Id.*  Plaintiff also

took four depositions of Dollar General witnesses and a Rule 30(b)(6) deposition of Dollar General's corporate representative who was noticed for 16 topics and subtopics. *Id.* at ¶¶ 2, 6. Dollar General also produced Excel spreadsheets containing voluminous data regarding employees at the distribution center where Plaintiff was employed, including its clock-in/clock-out records for a group of 75 randomly-selected employees (15% of the workforce at that distribution center). *Id.* at ¶ 5. Dollar General also conducted significant discovery, including deposing Plaintiff and his expert witness, as well as propounding 64 discovery requests, leading Plaintiff to produce 1,676 pages of documents. *Id.* at ¶¶ 3, 8. Moreover, Dollar General submitted declarations from 16 putative class members who disputed Plaintiff's class and collective wage and hour claims. *See* Dkts. 45-12 to 45-27.

In light of the Court's denial of class action and collective action certification, and the extensive discovery conducted by both parties, it is clear that the claims and defenses in this cases were fully developed and explored by all parties. Thus, this factor weighs in favor of finding the Settlement Agreement is a fair and reasonable compromise of the disputes between Plaintiff and Defendants.

4. <u>Risks of Establishing Liability and Damages.</u>

The terms of the Settlement Agreement, including the settlement amount, was reached through fact-based, good faith negotiation, wherein each Party analyzed the strengths and weaknesses in his or their respective positions and compromised accordingly in order to avoid the expense and uncertainty of further litigation. In particular, the Parties acknowledge that Plaintiff's primary theory of liability and supporting evidence has been questioned by the Court's ruling denying Plaintiff's Motion for Class Certification and Collective Action Certification, in which the Court held that time records purportedly showing time being "rounded away" merely prove

that "employees are compensated for less time than they are clocked in, not that they are compensated for less time than they actually worked." Dkt. 108 at 27.

The Parties further acknowledge that Defendants have other defenses to Plaintiff's claims, including, *inter alia*, unclean hands, lack of knowledge by Defendants, lack of willfulness by Defendants, a failure of Plaintiff to take advantage of corrective opportunities, and Defendants' reliance on regulations promulgated by the U.S. Department of Labor approving time-rounding practices like the ones utilized by Defendants. Many of these defenses are supported by the many witness declarations submitted by Defendants in opposing Plaintiff's Motion for Class Certification and Collective Action Certification. And as further explained below (*see* Section II.B.7), the settlement amount makes the Plaintiff whole while providing him an additional amount in liquidated damages. Accordingly, this factor weighs in favor of finding the Settlement Agreement is a fair and reasonable compromise of the dispute between Plaintiff and Defendants.

5. <u>Risks of Maintaining Class Action Through Trial and the Ability of Defendants to Withstand a Greater Judgment.</u>

In light of the Court's denial of class action and collective action certification, and the fact that the Settlement Agreement only resolves disputes between Plaintiff and Dollar General, these factors do not need to be considered when evaluating whether the Settlement Agreement is a fair and reasonable compromise of the disputes between Plaintiff and Defendants. *See Lyons*, 2015 WL 4378514, at *4 ("The Court reviews the fairness of the parties' proposed settlement agreement under these factors, bearing in mind that Lyons asserts his claims individually, not on behalf of a class.").

6. <u>Range of Reasonableness of Settlement Fund in Light of Best Possible Recovery and All Attendant Risks of Litigation.</u>

The Parties, represented by counsel with significant experience in employment law including experience with wage and hour lawsuits, evaluated the merits of the case and the

potential damages and exposure analysis. According to Plaintiff's own expert, time records show that Plaintiff "lost 890 minutes (15 hours) of straight time and 1,619 minutes (27 hours) of overtime." Dkt. 36, Exhibit A at ¶ 7. Using Plaintiff's hourly rate of pay at the time of his termination ($16.50 per hour), Plaintiff's total damages amount to no more than $915.75.[1] The Settlement Agreement, meanwhile, provides Plaintiff with $1,000 in wage damages, plus an additional $1,000 in liquidated damages.

The Parties agree that the settlement is fair, just, and adequate to settle the claims of Plaintiff, who is being made more than whole and also being provided with additional consideration related to liquidated damages. Moreover, the endorsement of the settlement by counsel for both Parties is a factor that weighs in favor of approval. *See Hane v. On Time Securing, Inc.*, 2018 WL 4095955, at *2 (N.D. Ohio Aug. 28, 2018) ("[I]n collective actions, the Court should consider the opinion of counsel and collective representatives."). In reviewing the opinions of counsel, a court should bear in mind that counsel for each side possesses the unique ability to assess the potential risks and rewards of litigation. *See Quintanilla v. A & R Demolition Inc.*, No. Civ. A. H-04-1965, 2008 WL 9410399, at *14 (S.D. Tex. May 7, 2008). In this case, counsel for Plaintiff are fully aware of the factual contentions of their client and are in the best position to opine as to whether this settlement produces fair results after consideration of risks. Plaintiff was fully informed of his options, and provided his authority to enter into this Settlement Agreement, as evidenced by his signature affixed to the Settlement Agreement.

Lastly, through negotiation and compromise, the Parties also agreed to a *mutual* release of all known and unknown claims that each party could assert against the other party, for which

---

[1] ($16.50 × 15 hours) + ($16.50 × 1.5 × 27 hours) = **$915.75**. By using Plaintiff's rate of pay at the time of his separation of employment, this calculation may be an over-estimation of Plaintiff's alleged damages as he earned less than $16.50 per hour for a portion of his employment with Dollar General.

Plaintiff will be paid an additional One Thousand Dollars. Plaintiff's counsel will also be paid a separate amount in attorneys' fees and costs by Dollar General, such that Plaintiff does not pay his counsel for any fees or costs from his settlement amounts described above. Accordingly, the Parties mutually believe that the Settlement Agreement is a fair and reasonable resolution, when considering the range of reasonableness of the settlement amount in light of the best possible recovery and all attendant risks of litigation.

## IV.   CONCLUSION

Based on the foregoing, the Parties respectfully request that the Court consider the merits of this Joint Motion and enter an Order approving the Settlement Agreement mutually negotiated by the Parties.

Dated August 10, 2022                                   Respectfully submitted,

*/s/ Chen G. Ni*
Joel S. Allen (*Pro Hac Vice*)
Texas Bar No. 795069
jallen@mcguirewoods.com
Melissa M. Hensley (*Pro Hac Vice*)
Texas Bar No. 00792578
mhensley@mcguirewoods.com
McGuireWoods LLP
2000 McKinney Avenue
Suite 1400
Dallas, Texas 75201
Telephone: 214.932.6400
Facsimile:  214.932.6399

Chen G. Ni (*Pro Hac Vice*)
Illinois Bar No. 6329089
cni@mcguirewoods.com
McGuireWoods LLP
77 W. Wacker Dr. – 41st Floor
Chicago, IL 60601
Telephone: 312.849.8164
Facsimile: 312.920.6146

Paul G. Nofer
Pa. Bar No. 52241
pnofer@klehr.com
Jonathan S. Krause
Pa. Bar No. 93817
jkrause@klehr.com
Klehr Harrison Harvey Branzburg LLP
1835 Market Street
Suite 1400
Philadelphia, PA 19103
Telephone: 215-569-2700

ATTORNEYS FOR DEFENDANTS

/s/ *Noah Axler* (w/ permission)
Noah Axler
Axler Goldich LLC
500 Office Center Drive
Suite 400
Fort Washington, PA 19034
naxler@axgolaw.com

Samuel A. Dion
Dion & Goldberger
1845 Walnut Street, Suite 1199
Philadelphia, PA 19103
samueldion@aol.com

ATTORNEYS FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of August, 2022, a copy of the foregoing Joint Motion was electronically filed with the Court's electronic filing system, which will provide notice of the same to all parties indicated on the electronic filing receipt.

/s/  *Chen G. Ni*